Patchin *v.* Dickerman.

EXECUTOR OF LYMAN PATCHIN *v.* WILLIAM A. DICKERMAN.

*Landlord and tenant.   Surrender.*

The plaintiff, who had leased certain premises to the defendant at a stipulated
rent, payable quarterly, with a provision that if the rent was not paid when
due, he might retake possession, notified, at the expiration of the seventh
quarter, one who was in possession under the lessee, that unless he paid the
rent for that quarter he must leave the premises.   The defendant had in fact
paid the rent for that quarter, and none was then due, and upon receiving
this notice the person in possession under him abandoned the premises,
and neither he nor the defendant occupied them afterwards: *Held*, that this
constituted such a surrender of the premises by the lessee, and acceptance
of them by the plaintiff as put and end to the lease, and released the defend-
ant from any further liability to pay rent.

COVENANT.   The case was referred, and the referee reported
that the plaintiff claimed to recover for the non-payment of the
rent of a saw mill and adjacent premises, according to the provis-
ions of a lease thereof from the testator to the defendant, signed
by both parties, for three years from March 16th, 1856, the
annual rent being payable quarterly.   This lease provided that
upon the failure to pay the rent when due, the lessor should have
the right to the immediate possession of the premises without
law or hindrance.

Receipts for the payment of the rent for six quarters, down to
September 16th, 1847, were indorsed upon the lease.   The plain-
tiff claimed that the rent after that time had not been paid, and
the defendant claimed that the quarter's rent immediately suc-
ceeding that date, and due December 16, 1847, had been paid.
Upon this point the referee found that such rent had been paid
by certain repairs made by the defendant in the May previous,
and which the plaintiff had agreed should apply towards the rent
of the mill.

It further appeared that in December, 1846, the defendant let
one Harbor have the premises in question, upon the same terms as
he had hired them, and directed him to pay the rent to the testa-
tor until otherwise ordered.   Harbor immediately took possession,
and put one Greenleaf into the mill-house as his sawyer, and paid
the rent to the testator up to September 16, 1847.   Afterwards,
and during that fall, the defendant told Harbor that he must pay

that quarter's rent to him, and he did so. When the seventh quarter's rent became due, in December, 1847, the plaintiff demanded it of Harbor, who informed him that he had paid it to the defendant and should not pay it again, whereupon the plaintiff told him to leave the premises, and not hoist the gate again unless he paid him the rent. Harbor immediately told Greenleaf not to saw any more, and that he must move out of the mill-house, and might move into a house belonging to Harbor; and neither Harbor nor the defendant occupied or used the premises after December 16, 1847. Greenleaf did not move out of the house till March, 1849, but he did not use the saw mill or any of the premises except the house, after December 16, 1847.

About the 20th of December, 1847, Greenleaf called on the plaintiff and told him he wished to hire the house of him. The plaintiff replied that he did not know as he had anything to do about it; that he thought Harbor would pay the rent and go along with the premises; but that Greenleaf had better not move out, and if he (the plaintiff) wanted him to go he would let him know.

In a few weeks after this, Greenleaf called again on the plaintiff to hire the whole premises included in the lease. The plaintiff told him he would rent him the whole if he would have the time commence back to the time Harbor left. Greenleaf declined to do this, and the bargain was not completed.

The plaintiff, in the winter of 1847–8, offered to rent the whole premises to other persons, and said that he had taken possession of the mill because the tenant had refused to pay rent, and that Dickerman could not expect to keep the mill unless he paid the rent.

The referee found that the plaintiff took possession of the premises only as above stated; that the mill stood without use from the 16th of December, 1847, to the 16th of March, 1849; that Greenleaf remained in the mill-house till some time in March, 1849, when the plaintiff gave him notice that he must leave, and he did leave; and that he never paid rent to any one for the use of the house. It did not appear that either party called on him for rent.

Upon this report the county court, at the June Term, 1858 —

ALDIS, J., presiding,—rendered judgment for the defendant, to which the plaintiff excepted.

*J. L. Stark, Jr.* and *T. Sibley*, for the plaintiff.

*N. B. Hall* and *A. B. Gardner*, for the defendant.

BARRETT, J. The only point discussed in this case is, whether there was a surrender and acceptance of the premises by the respective parties, effectual in law to terminate their relation under the lease.

It is clear that the plaintiff understood and recognized the substitution of Harbor for the defendant in the rightful possession and occupancy of the demised premises; and in the argument Harbor is treated as being so in the place of the defendant, as that what was said to and done by him, was of the same effect upon the rights and duties of the plaintiff, as if it had been said to and done by the defendant himself.

Neither Harbor nor the defendant used the leased premises after the plaintiff told Harbor that he must leave the premises and not hoist the gates again, unless he paid him the rent for the seventh quarter. Greenleaf's stay in the house after that, was not in the right of the defendant or Harbor, but rather under and by permission of the plaintiff.

The lease provides that the plaintiff, on the failure to pay the rent to him at the time of its becoming due, shall have the full right and liberty to take immediate possession of the premises, without law or hindrance.

Unquestionably, the plaintiff was asserting, in his demand on Harbor, his right under that provision of the lease. If that quarter's rent had been due to him, the refusal to pay it would have given the plaintiff the right to retake possession of the premises. What the plaintiff said to Harbor on his refusal to pay, without doubt, would have been sufficient notice to quit the possession, and a sufficient assertion of the plaintiff's right and claim to re-enter and resume the possession under that provision of the lease, to entitle him to maintain a proper suit to get the possession,

if it had not been peaceably yielded to him.    If so, it would seem that when Harbor, as the representative of the defendant, yielded to the claim and demand of the plaintiff, and abandoned the possession " without law or hindrance," it was all that was necessary to be done, or that could be done, in order to invest the plaintiff's testator with the full possession of the premises. When Patchin ordered Harbor to leave, and he did leave, the two acts would seem to constitute a surrender and acceptance of the possession between the parties, without any further act by either of them.

If a surrender had been tendered by Harbor or the defendant, without any demand by the plaintiff, then it would probably be necessary for the defendant to show an acceptance by the plaintiff, in order to render such surrender available to the defendant.    But in the present instance we think the surrender was, from the very nature of the case, complete and effectual, without any further act on the part of either party.

If it were otherwise, however, I, for one, think the case discloses acts and sayings of the plaintiff clearly evincing an acceptance of the surrender, such as would have affected him if the surrender had been made without any prior demand by the plaintiff.

The plaintiff, to avoid the effect of his claim and demand upon Harbor, presents two views, which we may properly notice; 1st, that as the case finds no. rent to have been due at the end of the seventh quarter, the plaintiff had no right to demand any, and, of course, no right to re-enter under the provisions of the lease; and therefore, his saying to Harbor that he must leave and not hoist the gate again, unless he paid the seventh quarter's rent, should be treated as a nullity.

We think it can not be countenanced by any principle to permit the plaintiff, after having made a claim as matter of legal right, to which the defendant yielded, and upon which he acted, to put himself *in statu ante bellum*, on the ground that he had made a *false clamor*, that should be treated as a nullity.    This would seem not only to be at contrariety with the principles of the familiar doctrine of *estoppel in pais*, but would seem to be reversing the maxim that a party shall not be allowed to take

advantage of his own wrong. Such would obviously be the result if after the defendant had abandoned the premises upon the plaintiff's claim and demand, the plaintiff, without any withdrawal or waiving of that claim and demand, could still hold the defendant for rent thereafter to accrue. And it is to be noticed that upon the trial before the referee, the plaintiff was claiming to recover for that seventh quarter's rent.

2d. The other view is, that the plaintiff did not demand a surrender of the premises, but only put the defendant, through Harbor, to his option, either to pay the rent or leave the premises; in other words, it was only a mode of asking him to pay the seventh quarter's rent.

So kindly a construction seems to be excluded by the language of the report and the facts shown by it. The plaintiff, having already been paid the rent for seven quarters, put to Harbor the alternative, either to leave the premises or pay a second time the seventh quarter's rent. It is useless to say how we should consider this view if the seventh quarter's rent had been due and unpaid. But it being found that it had been paid, the plaintiff's proposed alternative reduced the defendant, through Harbor, to the necessity of yielding to a false and unjust claim, as the sole condition of his further occupancy of the premises. This can hardly be regarded as a legitimate mode of asking for pay when nothing is due; and it does not become the plaintiff to complain that he was taken at his word, and the less troublesome horn of the dilemma was chosen by Harbor.

Regarding the surrender as having been made upon the plaintiff's claim, under the provisions of the lease, and in law and in fact accepted by him, we think the judgment of the county court to be correct. It is therefore affirmed.