ROBERT AMORY vs. WILLIAM KANNOFFSKY.

Suffolk. Nov. 17, 1874. — March 31, 1875. WELLS & DEVENS, JJ., absent.

The general agent of the owner of real estate, in the management of his buildings, gave a lease, under seal, in which the name of the principal appeared as lessor, but which was signed by the agent, who received some of the instalments of rent due, and the principal then brought an action against the lessee for subsequent instalments. *Held,* that a surrender of the lease to the agent and an acceptance thereof by him were a good defence to the action, although the agent had no written authority either to make a lease or to accept a surrender.

The lessee of land sublet it, and when the first instalment of rent came due both the lessee and the sub-lessee paid it to the lessor. The lessee then told the lessor that if he continued to receive the rent he must release him from liability under the lease. The lessor answered that he might give up his lease, and refunded the rent he had paid. The lessee took his lease to the lessor's office and delivered it to a person there who gave a receipt for it. The lessor knew that it had been left there and did not return it, and without making a demand on the lessee continued to receive rent for several months from the sub-lessee, against whom he subsequently brought an action under the Gen. Sts. c. 137, to recover possession. *Held,* in an action against the lessee for rent on the covenants of the lease, that there had been a surrender of the lease "by operation of law" within the Gen. Sts. c. 89, § 2, although there was no evidence that the person at the office had authority to accept surrender of leases.

In an action by a lessor to recover rent, the record of an action under the Gen. Sts. c. 137, brought by the lessor against the lessee's sub-tenant during the time for which the rent is claimed, is competent evidence upon the issue whether there has been a surrender and a substitution of the sub-tenant in the place of the lessee.

CONTRACT to recover rent reserved in a lease under seal from the plaintiff to the defendant and signed by John L. Roberts and the defendant. Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions in substance as follows:

The plaintiff proved the lease whereby it appeared that the rent was payable monthly in advance, on the sixth day of every month, and this action was brought to recover the instalments due on October 6 and November 6, 1872, the lease having at the latter date two years more to run. John L. Roberts, who signed the lease, was at the time the general agent of the plaintiff in the management of his buildings, but had no written authority to execute the lease.

The defence relied on was a surrender of the lease and an acceptance of the same by Roberts. The defendant offered in evidence the record of an action under the Gen. Sts. c. 137, brought

by the plaintiff against Michael G. Minon, to recover possession of the premises described in the lease. The writ in that action was dated November 9, 1872. The judge ruled, against the plaintiff's objection, that the bringing of that action was a bar to the recovery from this defendant of rent for the month from November 6 to December 6, it appearing that that action was not for forcible entry or detainer by Minon.

The defendant further offered evidence tending to show that in May, 1872, he had sublet the premises to Minon; that Minon for that month and for every month after paid rent directly to Roberts, and no demand for it was made on the defendant, and that for May, when both Minon and the defendant paid rent, Roberts repaid to the defendant the amount paid by him; that the defendant told Roberts that if he received rent from Minon, he must release him from liability under his lease; that Roberts thereupon told the defendant that he should continue to receive rent from Minon, and that he might give up his lease; and that afterwards the defendant took his lease to Roberts's office and delivered it to Francis R. Roberts, who gave him a receipt therefor. Francis R. Roberts was the brother of John L. Roberts, but there was no evidence that he had any authority to act for him or for the plaintiff in the matter of giving or annulling leases. John L. Roberts knew that the lease had been left at his office, and he never returned it to the defendant. There was no evidence of any authority in John L. Roberts to accept a surrender of a lease on behalf of the plaintiff other than the general verbal authority already mentioned.

The plaintiff requested the judge to rule that Roberts could not, without written authority, accept a surrender, and that the above facts, if proved, did not constitute a surrender by operation of law; but the judge refused so to rule, and instructed the jury, that if they found the facts which were testified to by the defendant's witnesses, as above stated, to be true, those facts would constitute a surrender, and that their verdict must be for the defendant. The jury found for the defendant, and the plaintiff alleged exceptions.

*J. C. Gray, Jr. & R. Gray*, for the plaintiff.

*G. M. Hobbs*, for the defendant.

ENDICOTT, J. It appears by the bill of exceptions that John L. Roberts was the general agent of the plaintiff in the management of his real estate. Under this agency he executed the lease in question and received the rent, though he had no written authority. That he was authorized to do this under his general agency must be taken for granted, from the fact that this action is brought upon the covenants of the lease for such instalments of rent as are not paid. In the absence of some restriction upon the admitted general agency of Roberts to manage the real estate, as he was doing by executing leases and receiving rent, his substitution of a new tenant, and his agreement with the defendant that the lease should be surrendered, must be presumed to have been within his general agency. These are the incidents of a general agency, and necessary for its complete execution. Nor was the actual surrender of the lease less binding because there is no direct evidence that Francis R. Roberts had authority to receive the lease from the defendant and give his receipt for the same. John L. Roberts knew it had been left at his office, did not return it, and continued to receive the rent from Minon in pursuance of the agreement for surrender made with the defendant. The question of the surrender of the lease is therefore to be considered as if made with the plaintiff himself.

The facts relied upon by the defendant to establish a surrender are as follows : In May 1872 he underlet the premises to Minon, and for that month both he and Minon paid rent to Roberts. The defendant then told Roberts that if he received rent from Minon he must release him from liability under the lease. Roberts said he should continue to take the rent from Minon, and that the defendant could give up his lease, and thereupon refunded the rent for May paid by the defendant. The defendant then took the lease to Roberts's office, and received the receipt as above stated. The rent was paid to Roberts by Minon until October following, and in November the plaintiff brought an action under the Gen. Sts. c. 137, against Minon, to recover possession. No further demand was made upon the defendant for rent until this action was brought. The presiding judge instructed the jury that if they found these facts to be true, there was a surrender of the lease and the defendant was entitled to a verdict. We are of opinion

that the ruling was correct, and that the defendant's estate in the premises was surrendered by operation of law within the meaning of the statute.   Gen. Sts. c. 89, § 2.

The facts bring this case within the rule, that where by the agreement between the lessor and lessee, the lessee abandons his possession and the lessor resumes possession of the premises, there is a surrender by operation of law.   The defendant gave up his lease, the plaintiff took Minon as his tenant.   The relations of the parties were thus changed.   Minon was no longer liable to the defendant, but became liable to the plaintiff.   The estate thus created in Minon is inconsistent with the rights of the defendant under his lease.   The plaintiff, on the other hand, by receiving the lease back and agreeing to the new relation between himself and Minon, and establishing a tenancy as to him, which he is precluded from denying, has done acts inconsistent with a claim for rent under his lease to the defendant.

The authorities in this Commonwealth and in England sustain this doctrine.   In *Randall* v. *Rich*, 11 Mass. 494, it was held that a lease was determined by the surrender of the key, its receipt by the lessor, and the subsequent letting of the house during the term to another tenant, although, by the statute, surrenders, like other contracts respecting real estate, must be in writing.

In *Talbot* v. *Whipple*, 14 Allen, 177, where the tenant left the premises with a manifest intent to abandon, and the landlord took possession with a manifest design of accepting the abandonment, it was said that the minds of the parties concurred in the common intent of relinquishing the relation of landlord and tenant, and executed this mutual intent by acts tantamount to a stipulation to put an end to the lease.

The leading case in England on this subject is *Thomas* v. *Cook*, 2 B. & Ald. 119.   In that case the tenant underlet the premises, and the landlord with the assent of the tenant accepted the new tenant.   The new tenant being in arrear, the landlord distrained on his goods, and it was held that these circumstances constituted a surrender of the interest of the original tenant by operation of law.   The court put the decision on the ground that the plaintiff had, with the assent of the defendant, accepted the new tenant, as his tenant of the premises.

In *Grimman* v. *Legge*, 8 B. & C. 324, the tenant notified the landlord that he should quit, the latter said he might do so. The tenant removed his furniture, delivered his keys, which were accepted ; and the lease was held to be terminated.

In *Dodd* v. *Acklom*, 6 Man. & Gr. 672, the delivery back of the keys, and their acceptance by the lessor, was held to be a surrender by operation of law, and *Thomas* v. *Cook* is expressly relied upon as authority.

In *Walker* v. *Richardson*, 2 M. & W. 882, A., having made a lease to B., before its expiration granted another lease to C. No surrender in writing of B.'s lease was shown, but his lease, with the seals torn off, was produced from A.'s custody. It being proved that it was the custom to send old leases to A.'s office before a renewal was made, and the release was thereupon cancelled by A.'s officer, it was held that there was evidence of B.'s assent to the lease to C., so as to determine his interest by operation of law. Baron Parke, in delivering his opinion, said : " Before the case of *Thomas* v. *Cook* I should have had some difficulty on this point, but that is a recognized case, where the assent of the former tenant that another shall hold in his place was held to constitute as valid a surrender of the first interest by act and operation of law, as if the former tenancy had been determined in writing."

In *Lyon* v. *Reed*, 13 M. & W. 285, some doubt is thrown by Baron Parke upon *Thomas* v. *Cook*, and the reasoning upon which it rests, and it is said the doctrine is not to be extended. The very learned opinion of Baron Parke in that case is relied upon by the plaintiff in support of his position that there was no surrender of this lease. But in *Lyon* v. *Reed* there was no change in the possession of the land, and in the later English cases the decision is commented on and *Thomas* v. *Cook* followed.

In *Nickells* v. *Atherstone*, 10 Q. B. 944, it was held to be a surrender by operation of law, where a tenant, having left the premises, on application for rent, wrote to the lessor that he could lease to any one else, and the lessor did so and put the new tenant in possession. Lord Denman, in delivering the 'udgment of the court, said that he entirely concurred with the decision of *Lyon* v. *Reed*, there being no change in the possession, but could not assent to the observations in the opinion upon the line of cases from *Thomas* v. *Cook* downward.

The remarks of Lord Denman were cited with approval in *Davison* v. *Gent*, 1 H. & N. 744, and the court say that *Thomas* v. *Cook* is not to be disturbed, and it must be taken as established that, where a lessee assents to a lease being granted to another, and gives up his own possession to the new lessee, that is a surrender by operation of law. In that case the lessor granted a new lease to a stranger with the assent of the tenant who gave up his possession.

In a later case, *Phené* v. *Popplewell*, 12 C. B. (N. S.) 334, an agreement by landlord and tenant that the term should be put an end to, executed by the tenant's quitting and the landlord taking possession by unequivocal acts of the premises, was held to amount to a surrender.

Upon this review of the authorities, we are of opinion that the facts in this case show a surrender of the lease, and the ruling of the court below was correct.

It is not necessary to consider whether the action brought by the plaintiff against Minon to recover possession of the premises is a bar to the recovery of rent from this defendant, as ruled by the presiding judge; for the reason that the case was submitted to the jury upon the facts relating to the surrender testified to by the witnesses. The record of that action was clearly competent as evidence upon the issue, whether there had been a surrender and Minon had been substituted for the defendant as the tenant of the plaintiff.                    *Exceptions overruled.*