N. L. KEAN v. R. E. ROGERS ET AL., and W. A. HOF-
MASTER, Appellant.

**Landlord and tenant:** MUTUAL SURRENDER OF LEASE. Where a landlord advised his tenant that he had better sell out his business

and quit the premises and the tenant acted upon the advice and the landlord's agent took possession of the premises, there was a mutual surrender of the lease and a discharge of the tenant from further rent.

**Same:** EVIDENCE. Evidence of a landlord's acceptance of the key to rented premises is admissible, and with other evidence may show an acceptance of a surrender of the premises.

**Same:** REVIVAL OF LEASE. Where the landlord upon vacation of rented premises relets the same on his own account without notification to or consent by the leasee, such reletting would generally show an acceptance of surrender of the premises, unless the lease provides for reletting at the expense of the tenant; and where there has been a complete surrender of the premises the lease can not be revived by the action of one party alone.

*Appeal from Worth District Court.*—HON. C. P. SMITH and C. H. KELLY, Judges.

FRIDAY, DECEMBER 17, 1909.

REHEARING DENIED WEDNESDAY, MARCH 16, 1910.

On rehearing.—*Reversed.*

SUIT in equity to recover rent alleged to be due under a written lease. There was a judgment for the plaintiff against the defendant W. A. Hofmaster, and he appeals.

*Blythe, Markley, Rule & Smith* and *Kepler & Westfall,* for appellant.

*Eaton & Salisbury,* for appellee.

SHERWIN, J.—The lease sued on was executed by the plaintiff and the defendant Rogers in August, 1903, for a term of seven years from the 1st day of September, 1903. The building was used by Rogers for a drug store until he sold his drug stock and transferred the lease

to the defendant Hofmaster in the early part of November of the same year. Hofmaster conducted a drug business therein until soon after Christmas, 1905, when he sold his stock and fixtures to one Speedling, who remained in the building a week or ten days and then removed the stock therefrom. Hofmaster had paid the rent up to January 1, 1906, and, upon his refusal to pay the rent which the plaintiff claimed accrued after that time, this suit was brought. to collect the same from Hofmaster, and resulted in a judgment for the plaintiff against Hofmaster for a part of his claim. The defendant Hofmaster, among other defenses, pleaded a surrender or abandonment of the lease which was accepted by the plaintiff, and it is to this issue that we shall devote our consideration of the case.

Rogers and Hofmaster were in partnership in the business about four days. Either shortly before the partnership was formed, or while it existed, the public became greatly excited over the death of an intoxicated person in the drug store in question, and it was charged that Rogers was at least partly responsible for the intoxicated condition of the deceased. At that time the plaintiff was in California, and Mr. H. T. Toye, a banker of Northwood, was acting as the plaintiff's agent for the property in question. Both Toye and the plaintiff knew of the sale by Rogers to Hofmaster, and Toye knew of the sale by Hofmaster to Speedling. Soon after the appellant had bought of Rogers, he became aware of the fact that there was a strong sentiment in the community against the sale of intoxicating liquors, and against his store in particular, because of the death therein of a drunken man. Toye knew of the public excitement and talk from personal contact and observation, and the plaintiff learned thereof at the time through the press and by written communication. Hofmaster and Toye talked of the conditions confronting the former, and Hofmaster says that Toye advised him to quit the business. This conversation is alleged to

have taken place before the sale to Speedling. On the 16th of December, 1905, the plaintiff wrote to the firm of Kepler & Westfall, attorneys, advising said firm that he had information that the appellant was making illegal sales of liquor in the leased building, and asking them to look into the matter and to oust Hofmaster as soon as possible if they believed that he was making illegal sales. Kepler & Westfall at once investigated the matter, and wrote the plaintiff that they thought there was nothing in the talk. Notwithstanding the information he had, the plaintiff wrote to the same firm on the 4th of January, 1906, saying: "Hofmaster has nothing to do with the Rogers lease unless I consent to the transfer of the same, and, as I was not consulted, I know nothing about it. Keep your eye, and if anything comes don't hesitate to act."

Before either of the above letters were written, Rogers had advised the plaintiff that he had sold out to Hofmaster, and that the latter had assumed the lease, yet in the letter of January 4th the plaintiff said, in effect,

1. LANDLORD AND TENANT: mutual surrender of lease.

that Hofmaster had no rights under the lease. The letter clearly shows that the plaintiff did not at that time consider the appellant his tenant under the lease. Mr. Toye does not squarely deny that he advised Hofmaster to quit the business that he was carrying on in the plaintiff's building, and we think the plaintiff's letters and the acts of Toye, as his agent, furnish ample corroboration of Hofmaster. As we have already said, Toye had full knowledge of the sale to Speedling, and at least did not object to his use of the building. When Speedling vacated, he turned the keys over to Toye, who accepted them and later permitted another to use the building for several weeks without any charge for rent, and without the permission of appellant. The plaintiff himself, however, later demanded rent therefor at the rate of $40 per month. Still later the plaintiff himself permitted a temporary occupancy of

the building. There is no question as to the agency of
Toye, nor as to the fact that he was in consultation with
Hofmaster as such agent in relation to Hofmaster's con-
tinuing the drug business in the plaintiff's building. If,
then, Toye told the appellant that he had better sell out
and quit the business and the premises, and afterwards
took possession thereof for the plaintiff, it would amount
to a mutual surrender of the lease, and release the ap-
pellant from the payment of future rent. Where the land-
lord tells the tenant to quit, and he does so, and the lessor
takes possession, there is an accepted surrender. 24 Cyc.
1366, 1374; *Boyd v. George,* 2 Neb. (Unof.) 420 (89
N. W. 271); *Amory v. Kannoffsky,* 117 Mass. 351 (19
Am. Rep. 416); *Patchins' Ex'r v. Dickerman,* 31 Vt. 666;
*Schuisler v. Ames,* 16 Ala. 73 (50 Am. Dec. 168); *Ter-
stegge v. Society,* 92 Ind. 82 (47 Am. Rep. 135).

Evidence of the acceptance of the key by the land-
2. SAME:   lord, while not conclusive, is admissible, and
evidence.   may be considered with other testimony as
tending to show the acceptance of the surrender.

So, also, reletting of the premises is not always con-
clusive. If the landlord relets on account of the tenant,
it is a circumstance of no value; but if the landlord
3. SAME: re-   relets on his own account without notifying
vival of lease.   the original lessee, and he does not consent
thereto, such reletting is generally held to show an ac-
ceptance of the surrender, unless the lease itself provides
for such reletting. There was no provision relating thereto
in the lease in question, and the use of the premises by
Mr. Emery and the plaintiff's demand for rent therefor
furnish evidence tending to support the claim of the de-
fendant that there was a mutual surrender of the lease.
The act of Mr. Toye in permitting Emery to use the build-
ing was ratified by the plaintiff when he demanded of
Emery rent therefor. It is also the general rule that an
absolute and unqualified taking of possession by the land-

lord shows an acceptance, unless the landlord indicates to the tenant, at that time, his purpose to hold him liable for the rent. *Armour Packing Co. v. Des Moines Pork Co.*, 116 Iowa, 723. Is this case the plaintiff, through his agent, took such possession without a word to the defendant Hofmaster. It is true that several months thereafter he notified Hofmaster that he intended to hold him for the rent; but, when a complete surrender has taken place, a lease can not be revived by the action of only one party thereto.

Our finding that there was a mutual surrender of the lease makes it unnecessary to consider the other points relied upon for a reversal.

The appellant is not liable for rent of the premises after January 1, 1906, and the judgment of the district court must be, and it is, *reversed*.