H. S. CHASE & COMPANY, Appellee, v. LOUIS J. EVANS et al., Appellants.

**LANDLORD AND TENANT: Leases—Abandonment by Tenant— 1 Re-Leasing by Landlord—Effect.** The act of a landlord in releasing premises abandoned by his tenant may have a very material bearing on the landlord's right to treat the abandoning tenant's lease as still alive; and that such re-leasing may not detrimentally affect such right, the landlord must exact an agreement accordingly from the abandoning tenant.

**LANDLORD AND TENANT: The Relation—Evidence.** Where a 2 landlord, upon the abandonment of the premises by his tenant, allowed the tenant's creditors to take possession of the premises, under an arrangement to pay a stated rental, and with provision for the termination of the arrangement, the question whether the

relation of landlord and tenant was created is, at the least, for the jury.

**LANDLORD AND TENANT:** Leases—Abandonment by Tenant—
3 Acceptance by Landlord—Evidence. The abandonment of premises by a tenant and the unqualified acceptance of such abandonment by the landlord terminate the lease. On such issue, the abandoning tenant may show:

(a) That, after his abandonment, the landlord remodeled the premises for other uses; and

(b) That the landlord did not notify him ·(the abandoning tenant) that he (the landlord) was taking possession *for the tenant's benefit.*

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

SATURDAY, DECEMBER 16, 1916.

THIS is an action to recover rent alleged to be due for business property in the city of Des Moines. There was a trial to a jury. At the close of the testimony, the court sustained plaintiff's motion to direct a verdict for $2,795.22. Judgment was rendered against defendant E. M. McCray for that amount, and he appeals.—*Reversed.*

*Guy Miller,* for appellants.

*Henry & Henry,* for appellee.

PRESTON, J.—Defendant E. M. McCray is the only one appearing and contesting the action, and he is the only one against whom judgment was entered. Plaintiff's petition was filed December 16, 1914, and alleges that defendants are indebted to it in the sum of about $2,700, on a lease of the premises for the period between the time the defendant and the Evans Company vacated the property, and when it is claimed the plaintiff rerented the same. The written lease was executed February 5, 1912, between H. S. Chase & Company, party of the first part, and the Evans Company and Louis J. Evans, John Evans and E. M. McCray, parties of the second part. The lease is signed as follows:

"H. S. Chase & Co., First Party, by H. S. Chase, Pres.

The Evans Co., by Lou. Evans. Lou. Evans, John Evans, E. M. McCray.''

The defendant E. M. McCray denies liability, alleging that, after the premises were abandoned, the landlord took possession of the same and leased them to other persons, and thereby released said defendant and accepted another tenant in his place; that this defendant surrendered the premises to the plaintiff, and the plaintiff accepted the surrender of the same and permitted the same to be remodeled by a new tenant without the consent of this defendant, and therefore released him from any further obligation under the lease.

The Evans Company is a corporation, and E. M. McCray and the others were, at the time of the execution of the lease, members thereof. The lease was to run for a period of 10 years and 8 months from February 1, 1912, at a monthly rental of $275. The company began to conduct a restaurant therein. Sometime thereafter, defendant McCray sold out his interest in the company to John Evans, and ceased to be connected' with the concern; some 7 or 8 months after that, the company and John and Louis Evans ceased to operate the cafe and closed the doors of the establishment, and, as defendant contends, abandoned the premises.

Appellant claims that the alleged abandonment was about the first of January, 1914; but some of defendant's evidence at least tends to show that this was about the last of March or first of April, 1914. At any rate, a short time thereafter, certain creditors of the Evans Company held a meeting, at which the plaintiff, one of the creditors of the Evans Company, was represented. The Evans Company and some of the others were also represented at this meeting by an attorney; but this defendant was not represented at any of the meetings of the creditors, and did not consent to anything that was done by the creditors with respect to the leased premises. The creditors decided to appoint from their number a committee of three, for the purpose of reopening the restaurant and operating the same. The plaintiff, through its president,

H. S. Chase, agreed with the creditors of the company that they might take possession of the premises and pay a monthly rental of $300, $275 per month being the rental charge to the creditors for their use of the premises, and $25 per month to be applied upon the back rent of the Evans Company. This contract was in writing, but had been lost, and was not produced at the trial. Under this agreement, the creditors of the Evans Company took possession; but the exact date is not disclosed, for the reason that the court refused to permit such testimony to be given. But the creditors commenced to pay rent on April 15, 1914, and continued to pay rent until October 15, 1914, 30 days prior to which last mentioned date, written notice was served upon plaintiff by the creditors of an intention to surrender the property on October 15, 1914.

Defendant claims that, during the time the creditors had possession of the premises, they remodeled them, making a cigar store out of the front part and a cafeteria out of the rear part of the room, one C. C. Taft paying rent for the front part of the store. But the court refused to allow defendant to prove some of these circumstances.

When the creditors surrendered the premises to plaintiff, October 15, 1914, plaintiff took possession of the same and made an effort to rent it, took possession of the personal property in the front end of the store, and either sold or credited the same on the rent account. The property was rented again by plaintiff, May 1, 1915, and no claim is made for any rent subsequent to that date.

The foregoing is the substance of appellant's statement of the facts, and is not disputed by appellee, except it claims that the creditors' agreement contained a provision that nothing therein should affect the rights of the landlord under the original lease. There is evidence to this effect. But the question is, or one question, whether defendant McCray is bound thereby, he not having been represented at the time the agreement was made.

The real question in the case, we take it, is whether or not there was an abandonment of the premises by the lessees, and an acceptance by the plaintiff, the lessor. As stated, the trial court excluded some of the evidence offered by defendant, and, as we think, erroneously so, because the evidence excluded would have a bearing upon the question as to whether there was an abandonment and an acceptance thereof by plaintiff, and would tend to sustain defendant's contention. This matter will be referred to later in the opinion.

We shall not attempt to go into the evidence in detail, but state our conclusion that there was sufficient evidence to take the case to the jury on the questions above indicated. It is largely a question of fact whether there was a surrender and acceptance by plaintiff, or whether plaintiff took possession for the benefit of this defendant. We ought, perhaps, to refer to the testimony of the defendant as to the conversation this defendant testifies to with the president of the plaintiff company. He says:

"I had a talk with H. S. Chase in the fall or winter of 1913 about my liability on this lease. It was before the company went out of business, about 7 or 8 months. The conversation was in Mr. Chase's store on Walnut Street, and I told him that I wanted to be released from the lease and asked him if I could get off of it. I told him I intended to sell out. He told me I didn't need to worry about it, or didn't need to be off, or something like that. He said he would be glad to have it himself in case it was possible to get, and that he would be glad to have the premises back. He said it was very cheap rent we were paying, and that he could probably rent for more than we were paying."

This evidence is not denied, although Chase was a witness. Whether this evidence alone was sufficient, we do not determine. There are other circumstances in the case bearing upon the question as to whether there was a surrender of the premises to plaintiff and an acceptance. As to the law, some of the cases relied upon are cited by both sides.

It is contended by appellee that, where leased premises are abandoned by a tenant, the landlord has the right to take possession of the same for the protection of the tenant and to attempt to relet the same for the benefit of the tenant, and such taking possession does not constitute a surrender of the lease by agreement of the parties or by operation of law. On the other hand, it is contended by appellant that, where a tenant abandons leased property and the abandonment is accepted by the landlord, the obligations of each party under the lease cease and determine, and they cite, to sustain this, *Kean v. Rogers,* 146 Iowa 559; 24 Cyc. 1372. And they say that evidence of the fact that the leased premises were rented to other parties and remodeled is material as bearing upon the question as to whether or not the abandonment of the tenant was accepted by the landlord, citing the same cases and *Higgins v. Street* (Okla.), 13 L. R. A. (N. S.) 398, and note; and other cases.

They also contend that, where a landlord takes possession of leased premises abandoned by the lessee and rents them to another, the landlord must notify the first tenant that the premises are rerented for the tenant's benefit, or it will constitute an acceptance of the abandonment and put an end to the lease, citing again the two cases first before cited, and *Armour Packing Co. v. Des Moines Pork Co.,* 116 Iowa 723; *Gray v. Kaufman Dairy & Ice Cream Co.,* 162 N. Y. 388. And further, that, upon abandonment by the tenant of leased premises, the landlord has three remedies: First, he may at once enter and terminate the contract and recover the rent up to the abandonment; or, second, he may suffer the premises to remain vacant and sue on the contract for the entire rent; or he may give notice to the tenant of his refusal to accept a surrender, and sublet the premises for the unexpired term for the benefit of the lessee to reduce his damages, citing *Higgins v. Street,* supra.

The trial court seemed to think that the relation of defendant McCray to the lease was that of a guarantor, and

also seemed to think that there was no consideration for the surrender of the premises; but these questions are not pleaded nor argued. The trial court held, as indicated by it, that it was agreed between defendant and plaintiff that the reletting of the premises to the creditors of the Evans Company should not constitute a release of the obligations of the defendant McCray under the lease. But we think this finding is not sustained by the record. The only testimony we discover concerning this is that given by H. S. Chase, who testifies that it was agreed between plaintiff and the creditors of the Evans Company that the taking of possession by creditors should not prejudice the rights of plaintiff in the original lease. But, as stated, it is not shown that McCray was present or represented at this meeting, and it is contended by appellant that he was not so present or represented.

*1. LANDLORD AND TENANT: leases: abandonment by tenant: releasing by landlord: effect.*

The trial court also took the view that there was no lease between the creditors of the Evans Company and the plaintiff. Some of the witnesses say that there was no new lease to the creditors; but, from an examination of this evidence, we think the witnesses so testifying meant that there was no written evidence of the lease. If plaintiff surrendered or relet to the creditors of the company the leased premises, whereby they became liable for the payment of $300 per month as rent, and were not permitted to terminate the agreement until 30 days' notice in writing had been given to plaintiff of an intention so to do, as we understand the written contract to provide, then there was a lease; at least that was a question for the jury whether plaintiff did relet the property to the creditors, and whether the creditors were tenants of the plaintiff under a tenancy from month to month, especially as to the defendant McCray, who claims to have had an agreement with plaintiff for a surrender.

*2. LANDLORD AND TENANT: the relation: evidence.*

In *Kean v. Rogers, supra,* at page 563, we said:

"So, also, reletting the premises is not always conclu-

sive. If the landlord relets on account of the tenant, it is a circumstance of no value; but if the landlord relets on his own account without notifying the original lessee, and he does not consent thereto, such reletting is generally held to show an acceptance of the surrender, unless the lease itself provides for such reletting. There was no provision relating thereto in the lease in question, and the use of the premises by Mr. Emery and the plaintiff's demand for the rent therefor furnished evidence tending to support the claim of the defendant that there was a mutual surrender of the lease. . . . It is also the general rule that an absolute and unqualified taking of possession by the landlord shows an acceptance, unless the landlord indicates to the tenant, at that time, his purpose to hold him liable for the rent. In this case the plaintiff, through his agent, took such possession without a word to the defendant Hofmaster. It is true that several months thereafter he notified Hofmaster that he intended to hold him for the rent; but, when a complete surrender has taken place, a lease cannot be revived by the action of only one party thereto.''

See, also, *Armour Packing Co. v. Des Moines Pork Co.,* 116 Iowa 723.

2. We shall now refer as briefly as may be to some of the evidence excluded by the trial court which we think would have a bearing upon the issue. Defendant should have been permitted to show that the front part of the 3. LANDLORD AND TENANT: leases: abandonment by tenant: acceptance by landlord: evidence. leased premises was changed into a cigar store. And defendant should have been permitted to show that he did not receive a notification from plaintiff subsequent to October 15, 1914, that plaintiff had taken possession of the premises for defendant's benefit. There may be other similar questions, but we shall not notice them specifically. The error is not likely to occur upon a retrial.

For the reasons given, the judgment of the district court

is reversed and the cause remanded for a new trial.—
*Reversed* and *Remanded.*

Evans, C. J., Deemer and Weaver, JJ., concur.