Bolster, C. J.
This is a companion case to that of Churchill v. Harris, decided this day.. The plaintiff claims under a deed from Mary G. Churchill, residuary devisee under the will of Joseph B. Churchill, of which will Anna Q. Churchill was executrix, who, purporting to act for the “Estate of Joseph B. Churchill”, executed in 1933 a five-year lease to the defendant’s assignor. The plaintiff also has a sealed assignment of the lease from Anna Q. Churchill, executrix. This action is for the rent of April, 1936. The defendant occupied till April 21, when he gave the key to the plaintiff’s attorney and took a receipt therefor.
It may be noticed in passing that the fact, if it be a fact, that by the terms of the will certain trustees took a one-third undivided interest in the real estate does not end the case. Rising v. Stannard, 17 Mass. 282. Grundy v. Martin, 143 Mass. 279. cf. Codman v. Hall, 9 Allen 335. Cunningham v. Pattee, 99 Mass. 248. It does not appear that the trustees had ever asserted any adverse elaim.
*97 Three questions appear to be involved:
(1) Did the evidence require a finding of surrender and acceptance ?
(2) Can the defendant avail himself of any defect in title of this original lessor ?
(3) Has the defendant’s covenant to pay rent, upon which the declaration counts, devolved upon this plaintiff?
1. The reported evidence is that on April 21, 1936 the defendant vacated the premises and gave the keys to the plaintiff “who received the same,” and that the plaintiff placed “To Let” signs in the windows. The receipt for the keys was by attorney, but in view of the way the evidence is stated, his authority must be assumed. There is no doubt that such evidence would support a finding of surrender. The present question is whether it compels such a finding. The burden was on the defendant to prove a surrender. Taylor v. Kennedy, 228 Mass. 390. It is plain that resumption of possession and the exercise of dominion, as by putting in a newtenant, will accomplish a surrender. Randall v. Rich, 11 Mass. 494. Amory v. Kannoffsky, 117 Mass. 351. Washington &c. Realty Co. v. Freedman, 263 Mass. 554. On the other hand, when a term lessee vacates, the landlord may, even if not compelled so to do, re-let for the lessee’s account. Shpunt v. Silverman, App. Div. #89811 (25-101) and cases cited. The fact that the lease had a substantial period to run is one of the things to be taken into account in weighing the landlord’s intention to accept. And the report does not tell us how the “To Let” signs read or whether the defendant ever saAV them. Moreover, the fact of suit brought on May 6, a few days after accrual of the April rent, has some tendency to disprove acceptance. There are no elements of estoppel in pais such as appeared *98 in Amory v. Kannoffsky, supra. And mere receipt of the keys is no more an evidence of a willingness to accept a proffered surrender presently than to accept it when and if a new tenant should be found. We agree that the issue is to be determined objectively and that actions count, rather than any undisclosed intent. Hobbs v. Massasoit Whip Co., 158 Mass. 194, but it is still an issue of fact, as the judge treated it here. It has been so treated in the course of decision in this division.
2. The defendant’s covenant is not to pay so long as he remains in possession, but during the term. His only relation to the property was that of a tenant for years. There is no sufficient evidence of a tenancy at will. He has not been put out by title paramount, nor has he been interfered with by those claiming under the will. He could continue in occupancy if he chose. It is hot enough that he has left. He must have had cause to leave. His right to occupy is not in jeopardy. While he could prove that paramount title had intervened or that his grant had run out through cessation of his grantor’s title, Hall, Landlord and Tenant, §§205-208, we know of no case which allows an escape by merely proving that his grantor’s title was not what it originally purported to be. Denial of the right to set up a jus textii to escape one’s own contractual responsibility is not something peculiar to leasehold cases. It runs through many other departments of the law. cf. Slater v. Rawson, 6 Metcalf, 439. Carrier v. Sears, 4 Allen 336. Richardson v. White, 167 Mass. 58. Dixon v. Nat. Life Ins. Co., 168 Mass. 48. Jennings v. Whitney, 224 Mass. 138, 143. Estoppel to allege an original want of title is only one aspect of a larger legal principle. A tenant wishing to use another’s right must in some way make that right his own.
*99 There are many cases in the books in which a lessee has been held to his obligation though his lessor had no title. Kendall v. Carland, 5 Cush. 80 is a good example. cf. Beal v. Boston Car Spring Co., 125 Mass. 157.
A rent reserved imports a reversion, an incorporeal hereditament. If a lessee is estopped to deny title there would seem no reason why he should not equally be estopped to deny that there was an alienable revision upon his term, while the term lasts.
3. The most difficult question in this case is whether this plaintiff can be said to. be the legal owner of the covenant which he seeks to enforce. While under modern forms of pleading this is denominated an action of contract, it is intrinsically an action of covenant, and emphatically not an action on a simple contract. We think we should not, at law, take the easy way out taken in the recent equity case of Adamowicz v. Iwanicki, 286 Mass. 453 of saying that the defendant’s seal was unnecessary, and therefore, his obligation should be dealt with as a simple contract in which case Gen. Laws, Ch. 231 §5 would come into play. In many states the distinction between sealed and unsealed contracts has been abolished by statute but, wanting such a statute, we apprehend it to be the business of a court to take the contract as the parties in fact made it and not as they could have made it. In view of the divergent historical lines of development of the actions of covenant and assumpsit, and of the differences in legal consequences and attributes which follow one or the other, it is a risky venture at law or equity to transform their contract. It is a gratuitous assumption that the seals were not deliberately affixed to thé documents in this case with full knowledge of the legal consequences of that act.
The defendant’s covenant is something separable from the title, something which lies in grant and not in livery, *100 Winnisimmet Trust Co. v. Libby, 232 Mass. 491, and the rules of law governing its alienability are the rules at common law, unaffected by Gen. Laws, ch. 183, §3. Browne, Statute of Frauds, ch. 1 §2. Hixon v. Starr, 242 Mass. 371, was a case which concerned the devolution of the burden of a covenant, not the title to it.
The covenant does not in terms run to “assigns”. Looked at purely in its contractual aspects, on its face it is a promise to Anna Q. Churchill and is a direct promise to no one else. Williston, Contracts, Rev. Ed. §215. When assigns are named, the promise runs to them as well. Hunt v. Thompson, 2 Allen 341. Holmes, Common Law, Lecture 10. But see, Ames, Lectures on Legal History, pp. 100, 211. It is equally well settled cf. Platt Covenants, P. 523, Rawle, Covenants §203, Hunt v. Thompson, 2 Allen 341, that if the covenant has to do with real estate, the covenant “runs with the land” and may be available of by an assignee of the reversion, or of the lease, by an action in his own name, even if assigns be not named. A covenant to pay rent is one peculiarly within that rule. That result is particularly desirable in this case, because the promise runs to one called an executor, a position of briefer tenure than the length of this term. Anna Q. Churchill had no reversion, but she owned the fruits of the term in trust, was accountable for them, Wilson v. Shearer, 9 Met. 504, has assigned her interest by deed, and by that act has become estopped to gainsay this plaintiff’s right. Mary C. Churchill has likewise become estopped by her deed. While she could not be a principal on the lease, she was a cestui qui trust. Cook v. Howe, 280 Mass. 325. It does not appear that the trustees under the will have not been satisfied out of other assets. All interests seem to have coalesced in this plaintiff, and, in the light of all the facts here and the family relationship of the parties, it would seem a fair inference, in support of *101 the finding, that the lease was made with the knowledge and consent of those to whom the avails of the lease actually belonged, and that there is now no adverse interest outstanding which can jeopardize the defendant’s rights under the demise.
We are the more satisfied with this result because if a fatal flaw were found in this plaintiff’s chain of title, all that would be called for would be an amendment substituting as plaintiff, Anna Q. Churchill, to the use of Suvadian. We do not think such amendment necessary.
Report dismissed.