JOHN GRAY, Respondent, *v.* THE KAUFMAN DAIRY AND ICE CREAM COMPANY, Appellant.

1. LEASE — SURRENDER BY OPERATION OF LAW. A surrender of leased premises is created by operation of law, although the landlord has declined an offer of surrender, where after the tenant has abandoned them the landlord lets them in his own name to a third person for a new term, without the tenant's consent.

2. ASSENT BY SILENCE. A tenant's assent to a new letting of premises which he has abandoned will not be implied by his failure to answer a letter from the landlord, saying that he would relet them on the tenant's account, so as to prevent a surrender by operation of law if the landlord subsequently relets them.

*Gray* v. *Kaufman Dairy & Ice Cream Co.*, 16 App. Div. 631, reversed.

(Argued March 26, 1900; decided April 6, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 5, 1897, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived.

This action was brought to recover two months' rent of the premises known as No. 787 Eighth avenue, in the city of New York. In July, 1893, the plaintiff let the said premises to the defendant for ten years from August 1st, 1893, at the yearly

rental of $2,400, payable monthly in advance, and also the extra water rent charged against the defendant for its business. The defendant took possession about July, 1893, and paid rent to November 1st, 1893, but refused to pay for the months of November and December of that year, the rent of which became due and payable on the first days of those months respectively.

The answer, in effect, admits the making of the lease, but denies any indebtedness under it and sets up the eviction of the defendant, a surrender and rescission of the lease, and claims credit for the rent received from the undertenant. On or about the 28th or 29th of October, 1893, the plaintiff had a conversation with Mr. Kaufman, the president of the defendant, upon the demised premises. The plaintiff's version of this conversation is as follows : " They were pulling up the store and the things, and were going to move out. They had not said anything to me about moving out prior to that time. I asked Mr. Kaufman what he was doing, pulling up the store. He said he was going to move out, and I asked him why, and he said because he couldn't make any money, and I told him that he had a lease on it, and that I would hold him responsible for the rent if he went out. ' Well,' he says, ' I am moving out, I don't want to stay where I don't make my rent.'" The defendant moved out and sent the keys of the store to the plaintiff by mail. Plaintiff received them about the 2nd of November, 1893. On the 3rd of November, 1893, plaintiff served upon the defendant a notice of which the following is a copy :

"NEW YORK, *November 3rd,* 1893.
" *To the Kaufman Dairy & Ice Cream Co. :*

"Yesterday I received the keys of 787 Eighth Avenue by mail. I hereby notify you that I do not accept a surrender of the premises, and that I intend to hold you responsible for the rent under the lease. I shall let the premises on your account, and hold you for any loss which may be sustained.

"Yours, etc.,

"JOHN GRAY."

The defendant made no answer to this notice. On the 17th of November, 1893, the plaintiff went to Kingston and saw Mr. Kaufman, the president of the defendant, Mr. Spore, the secretary, and a Mr. Bruin. The plaintiff asked Mr. Kaufman for the November rent, and the latter replied that no rent was due; that he had not made a lease; that there was nothing due and he would not pay; that he had given up the store and plaintiff could do what he liked with it. Thereupon the plaintiff started for home. The president and secretary of the defendant went to the railway station and there had a conversation with the plaintiff about compromising the matter by taking the cellar of said premises for fifty dollars a month for the term of the lease if the plaintiff would cancel the same as to the rest of the premises. The plaintiff said he would think over the matter and see what he could do with the remainder of the property, and let them know. The plaintiff testifies that thereafter, and on the 27th of November, 1893, he wrote to the defendant as follows:

"Kaufman Dairy & Ice Cream Co.:

"Gentlemen.— I have an offer for the store you leased from me, 787 Eighth Ave. The parties will pay $1,500 to the first of May and $1,600 for three years from May. I think this is about as good an offer as can be expected, considering the times. Please let me know if you will keep the cellar and pay the difference between the $1,500 and $2,400 to May, and $1,600 — $2,400 after. An early reply will much oblige.          Yours respect.,          J. GRAY,

"323 Washington Ave."

The plaintiff further testifies that he inclosed this letter in an envelope directed to the defendant at Kingston, N. Y., deposited it prepaid in the post office at Brooklyn and received no reply thereto. The defendant had tenants in the cellar when it left the premises. These tenants attorned to the plaintiff.

On or about the 1st of December, 1893, plaintiff let the premises which had been previously demised to the defendant

to one Mary Ann Keogh for the term of three years and five months at an annual rental of $1,500 per year for the first five months, and $1,600 per year for the remaining three years, to be paid in equal monthly installments in advance.

The defendant pleaded eviction, but gave no evidence upon that subject, and upon the trial admitted that it had no excuse for leaving the premises. Kaufman admitted having a conversation with the plaintiff before the defendant left the premises, in which the plaintiff stated that he would hold the defendant for the rent, but denied that he, Kaufman, had stated that the defendant would not stay where it did not make any money. Kaufman also admitted the receipt of the letter dated November 3rd, but both he and Spore denied receiving the one dated November 27th. Both admitted the conversation testified to by the plaintiff as having taken place at Kingston, and Spore testified that on that occasion Kaufman stated distinctly that the defendant did not owe any rent; that it had given up and surrendered the premises; that there was some talk at the railroad station about renting the cellar from the plaintiff at fifty dollars per month during the term of the lease, but there was nothing said in that conversation about plaintiff's reletting the premises on defendant's account. Abraham L. Gray, a son of the plaintiff, testified on the latter's behalf that he went to Kingston with his father to see Kaufman and was present at the conversation at the railroad station. He testified that Mr. Spore offered the plaintiff fifty dollars a month for the basement if he would let the defendant off on the store, and the plaintiff replied that he would think it over and let them know. The lease to the defendant contained no provision against subletting, except for "any saloon or liquor business," and contained no provision for a reletting of the premises by the plaintiff in case the defendant vacated the same during the term of the lease.

After the evidence was all in, the parties waived the jury and submitted the facts to the court for decision. The defendant admitted its liability for the November rent, but claimed that it was released as to the December rent by the reletting

of the premises to said Mary Ann Keogh on the 1st of December. Upon these facts the court found that the plaintiff was entitled to recover rent for the months of November and December, less the amount received from the undertenants; that the plaintiff refused to accept a surrender of the premises; that the premises were at no time surrendered to the plaintiff, and that the reletting of the premises was done with the assent of the defendant.

*David B. Hill* for appellant. The reletting of the store by the landlord, in the absence of an agreement, express or implied, that he might do so as agent for the tenant, constituted an acceptance of surrender. (4 R. S. [8th ed.] 2589, § 6; *Coe* v. *Hobby*, 72 N. Y. 145; *Gray* v. *K. D. & I. C. Co.*, 9 App. Div. 115; *Bedford* v. *Terhune*, 30 N. Y. 462; *Smith* v. *Kerr*, 108 N. Y. 36; *Vandekar* v. *Reeves*, 40 Hun, 430; *Ballou* v. *Baxter*, 28 N. Y. S. R. 431; *Hurley* v. *Shering*, 17 N. Y. Supp. 7; *Beal* v. *White*, 94 U. S. 389; *Amory* v. *Knapp*, 117 Mass. 351; *Thomas* v. *Cook*, 2 Barn. & Ald. 119.) There is no evidence in the case upon which the finding of the trial court, that the defendant assented to the reletting, can be based. (*Farley* v. *Denton*, 3 C. & P. 109; *Commonwealth* v. *Eastman*, 1 Cush. 205; *Learned* v. *Tillotson*, 97 N. Y. 12; *Thompson* v. *Simpson*, 128 N. Y. 289; *Thomas* v. *Gage*, 141 N. Y. 510; *Vassar* v. *Camp*, 11 N. Y. 450; *People's Bank* v. *St. A. R. C. Church*, 109 N. Y. 523; *Marvin* v. *Wilber*, 52 N. Y. 270.) Since the reletting to Keogh by plaintiff was for a term exceeding one year, the authority to make such a lease on defendant's behalf could not be implied. (*Underhill* v. *Collins*, 132 N. Y. 272; *Chase* v. *S. A. R. R. Co.*, 97 N. Y. 388.) There being no agreement in writing authorizing plaintiff to relet, for defendant's account, the Keogh lease for a term exceeding one year, must be held to be in law, as it is in form, plaintiff's own lease since, as defendant's lease, it would be void under the Statute of Frauds for all purposes. (*Coudert* v. *Cohn*, 118 N. Y. 310; *Dung* v. *Parker*, 52 N. Y.

496.) By making the Keogh lease in his own name, under seal, and without referring to his alleged authority to relet on defendant's account, plaintiff is estopped from denying that such lease is his own. (*Denike* v. *De Graff*, 87 Hun, 62; *Briggs* v. *Partridge*, 64 N. Y. 361; *Schaefer* v. *Henkel*, 75 N. Y. 381; *Henricus* v. *Englert*, 137 N. Y. 494; *Kiersted* v. *O. & A. R. R. Co.*, 69 N. Y. 345; *M. L. Ins. Co.* v. *Shipman*, 119 N. Y. 329.) Plaintiff was under no duty to relet the premises on defendant's behalf in order to reduce the damages. (*Underhill* v. *Collins*, 132 N. Y. 271; *Matter of Ludeke*, 33 App. Div. 399; *Clendinning* v. *Lindner*, 9 Misc. Rep. 682; *Matter of Hevenor*, 144 N. Y. 271.)

*Jacob F. Miller* for respondent. The premises were properly relet on defendant's account after due notice to it of such intention. (*Underhill* v. *Collins*, 132 N. Y. 269; *People ex rel.* v. *R. R. Comrs.*, 158 N. Y. 430; *Amherst College* v. *Ritch*, 151 N. Y. 320; *People* v. *Helmer*, 154 N. Y. 599; *Marden* v. *Dorthy*, 160 N. Y. 39; *Reed* v. *McCord*, 160 N. Y. 330.) When the defendant left the premises without excuse, the plaintiff, if he did not accept a surrender, was in duty bound to let the premises on behalf of defendant, or at least was at liberty to do so in order that the amount of damages might be made as small as possible. (*Miller* v. *Mariners' Church*, 7 Greenl. 51; *Shannon* v. *Comstock*, 21 Wend. 461; *Heckscher* v. *McCrea*, 24 Wend. 309; *Clark* v. *Marsiglia*, 1 Den. 317; *Spencer* v. *Halstead*, 1 Den. 606; *Soker* v. *Damon*, 17 Pick. 284; *Morgan* v. *Smith*, 70 N. Y. 537; McAdam on Landl. & Ten. 205, 210, 467, 475; *Johnson* v. *Meeker*, 96 N. Y. 96; *Bloomer* v. *Merrill*, 29 How. Pr. 259.) For the purpose of such letting the plaintiff was the agent for the defendant. (*Pollen* v. *Le Roy*, 30 N. Y. 556; *Dustan* v. *McAndrew*, 44 N. Y. 72; *Van Brocklen* v. *Smeallie*, 140 N. Y. 70; *Howard* v. *Daly*, 61 N. Y. 362; *Dillon* v. *Anderson*, 43 N. Y. 231; *Hamilton* v. *McPherson*, 28 N. Y. 72; *Clark* v. *Marsiglia*, 1 Den. 317; *Underhill* v. *Collins*, 132 N. Y. 270.) After the defendant had left the premises under the circum-

stances detailed in the evidence, the plaintiff might relet the premises on its account, and after the plaintiff had changed his position by reletting, it was too late for the defendant to retract its renunciation of the lease so made and reclaim the premises. (*Windmuller* v. *Pope*, 107 N. Y. 675; *Bernstein* v. *Meech*, 130 N. Y. 358.) Defendant not having objected to the reletting of the premises, its silence must be deemed an acquiescence in the making of the new lease on its account, and it is liable for the difference between the rent received and the rent obtained. (Herman on Estoppel, §§ 917, 932, 952, 954, 965, 978; *Packard* v. *Sears*, 6 Ad. & El. 474; *McClare* v. *Lockard*, 121 N. Y. 312; *Dailey* v. *Rector*, 50 Am. Dec. 245; *Thomas* v. *Sanborn*, 35 Am. Dec. 490; *Frost* v. *S. M. Ins. Co.*, 49 Am. Dec. 234; *Hall* v. *Fisher*, 9 Barb. 31; *Viele* v. *Judson*, 82 N. Y. 40; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344.) The defendant's objection that the lease was made in the name of the plaintiff, and that, therefore, he must be held to have intended to let the premises on his own account, has no foundation. (*Thurston* v. *Cornell*, 38 N. Y. 287; *Tracy* v. *McManus*, 58 N. Y. 257; *Bayliss* v. *Crockcroft*, 81 N. Y. 371; *Bedell* v. *Chase*, 34 N. Y. 388; *McKown* v. *Hunter*, 30 N. Y. 628; *Porter* v. *Ruickman*, 38 N. Y. 210.)

WERNER, J. This controversy arises out of the conventional relation of landlord and tenant under circumstances governed by fixed principles of law. The first and most important question in the case is whether the plaintiff's reletting of the premises described in the lease, after the defendant's attempted surrender of the same, changed or affected the legal status of the parties under the original lease. It is so well settled as to be almost axiomatic that a surrender of premises is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they have both agreed to consider the surrender as made. It has been held in this state that " a surrender is implied, and so effected by operation of law within the statute, when another

estate is created by the reversioner or remainderman with the assent of the termor incompatible with the existing state or term." (*Coe* v. *Hobby*, 72 N. Y. 145.) The existence of this rule has been recognized in this state in *Bedford* v. *Terhune* (30 N. Y. 463), *Smith* v. *Kerr* (108 N. Y. 36), *Underhill* v. *Collins* (132 N. Y. 271), and in other jurisdictions in *Beall* v. *White* (94 U. S. 389), *Amory* v. *Kannoffsky* (117 Mass. 351), *Thomas* v. *Cook* (2 Barn. & Ald. 119), *Nickells* v. *Atherstone* (10 Ad. & El. N. R. 944), *Lyon* v. *Reed* (13 M. & W. 306), and Washburn on Real Property (v. 1, pp. 477, 478). It is conceded that defendant's offer of surrender was declined by the plaintiff, and that after the defendant's abandonment of the premises the plaintiff relet the same in his own name to one Mary Ann Keogh for a term of three years and five months. Such a situation, unqualified by other conditions, would create a surrender by operation of law. · We must, therefore, ascertain whether the conduct of the parties takes this case out of the operation of this rule.

It is urged by the learned counsel for the plaintiff that the reletting was done with the consent of the defendant under circumstances which bring the case directly within the rule laid down by Judge HAIGHT in *Underhill* v. *Collins* (132 N. Y. 270). In that case the landlord and tenant had a conversation a few days before the latter vacated the premises. The tenant asked the landlord to take the same off his hands. This the landlord declined to do, insisting that he would hold the tenant for the rent and would lease the premises for his benefit. In the case at bar there was also a conversation before the premises were vacated; but in this conversation there was nothing said about a reletting. The plaintiff simply said that he would hold the defendant for the rent. On the 2d of November, 1893, a day or two after defendant's removal, the plaintiff received the keys of the premises. He returned them with a note stating that he would relet on defendant's account and hold it responsible for any loss that may be sustained. To this note the defendant made no reply. On the 17th of November, 1893, the plaintiff and his son

went to Kingston and saw Kaufman and Spore. In the con-
versation which took place between them and the plaintiff
there was no suggestion of reletting. The plaintiff made a
demand for the rent which was unpaid, and the defendant
made an offer of compromise, under which it agreed to take
the cellar of said premises at fifty dollars per month if the
plaintiff would cancel the lease as to the store. This offer the
plaintiff agreed to consider. On the 27th of November, 1893,
the plaintiff wrote to the defendant that he had an offer for
the store of $1,500 per year to the first of the next ensuing
May, and $1,600 per year for three years thereafter. He
requested the defendant to let him know if it would keep the
cellar and pay the difference between the rent fixed by the
lease and the amount offered by the intending tenant. To
this letter the defendant made no reply. It will be observed
from this brief *resumé* of the facts that there are several dis-
tinct features in which this case differs from the *Underhill*
case. In the latter case there was a personal interview before
the tenant had vacated, in which the subject of reletting the
premises was discussed. Here the subject of reletting was not
mentioned until after the tenant went out, and then the sug-
gestion came in a letter to which the defendant made no reply.
Obviously the only theory upon which defendant can be held
to have assented to the reletting of the premises is that by its
silence it acquiesced in the act of the plaintiff. We may
assume, although we do not decide, that if the communica-
tions upon the subject of reletting had been made verbally in
the course of conversation between the parties, even after the
tenant had vacated the premises, the rule as to agreements by
implication laid down in the *Underhill* case might be held to
apply. But here, as we have seen, the landlord's proposal to
relet was in the form of two letters. In the first of these,
dated November 3rd, he makes the unequivocal assertion
that he will let the premises on defendant's account, and will
hold it for any loss that may be sustained. Defendant's fail-
ure to reply to this letter is followed by a personal interview
on the 17th of November, in which there is no reference to a

reletting of the premises, and in which defendant's president, after denying any liability for rent, tells the plaintiff to do what he likes with the premises. Then follows the letter of November 27th, informing the defendant of the offer which the plaintiff had received from an intending tenant, and asking defendant if it would pay the difference between the amount offered and the rent reserved in the original lease. It will be observed that, even if we were to give these written communications the same force and effect as verbal statements made in personal interviews between the parties, the facts here are easily differentiated from those in the *Underhill* case. There the tenant vacated the premises upon the offer of the landlord to relet for his benefit and under such circumstances as to permit the inference that he accepted the offer. Here the landlord's statement to that effect, made after the tenant's abandonment of the premises, is followed by negotiations in which the tenant expresses a willingness to keep the cellar at fifty dollars per month if the landlord will cancel the lease as to the rest of the premises. These steps are succeeded by a communication from the landlord, in which he requests the tenant to decide whether it will keep the cellar and pay the deficit which will arise by an acceptance of the offer which the former then had under consideration. It may well be doubted whether verbal declarations made in personal interviews between the parties, under the circumstances above narrated, would support the plaintiff's theory of this action. To create a contract by implication there must be an unequivocal and unqualified assertion of a right by one of the parties, and such silence by the other as to support the legal inference of his acquiescence. But it is clear, both upon principle and authority, that we have no right to indulge in the assumption that the letters above referred to have the force and effect of verbal statements made in the presence of the defendant's officers. The rule is precisely to the contrary. It is well expressed in *Learned* v. *Tillotson* (97 N. Y. 12) as follows: "We think that a distinction exists between the effect to be given to oral declarations made by one party to another,

which are in answer to or contradictory of some statement made by the other party, and a written statement in a letter written by such party to another. It may well be that under most circumstances what is said to a man to his face, which conveys the idea of an obligation upon his part to the person addressing him, or on whose behalf the statement is made, he is at least in some measure called upon to contradict or explain; but a failure to answer a letter is entirely different, and there is no rule of law which requires a person to enter into a correspondence with another in reference to a matter in dispute between them, or which holds that silence should be regarded as an admission against the party to whom the letter is addressed. Such a rule would enable one party to obtain an advantage over another and has no sanction in the law." To the same effect are *Bank of B. N. A.* v. *Delafield* (126 N. Y. 418) and *Thomas* v. *Gage* (141 N. Y. 506).

It is manifest, therefore, that the act of the plaintiff in reletting said premises under the circumstances referred to operated as an acceptance of the defendant's offer to surrender. The judgment herein can be supported upon no theory that is consistent with the established rules of law. As the views above expressed are decisive of the case, it is unnecessary to discuss the other questions raised by the defendant.

The judgment of the court below should be reversed and a new trial granted, with costs to abide the event.

LANDON, J. (dissenting). The trial court found as facts that "Plaintiff refused to accept a surrender of the premises, and did not accept it, and the premises were at no time surrendered to the plaintiff. The letting of the premises was done with the assent of the defendant." The order of affirmance by the Appellate Division does not state that it was unanimous, but that is not important here, for the record contains evidence tending to support the findings. The evidence tends to show that the defendant intended by its conduct to threaten the plaintiff with the loss of his rent, and thus to coerce him to relet the premises, and then deny its

assent, notwithstanding after its receipt of the plaintiff's first letter, it told the plaintiff he could do as he liked with the premises. The defendant thus replied to the plaintiff's letter, at least so the trial court, in view of all the circumstances, might find, and did find.

PARKER, Ch. J., GRAY, O'BRIEN and HAIGHT, JJ., concur with WERNER, J., for reversal; LANDON, J., reads dissenting memorandum; CULLEN, J., not sitting.

Judgment reversed, etc.