then in existence, but were to be constructed or manufactured by the tailor, not as part of his general stock, but as adapted solely to the plaintiff's use.

The cases in this state have established this to be the law. Sewall v. Fitch, 8 Cow. 215, determined that the sale of nails to be manufactured was not within the statute. Chief Judge Savage said:

"The contract was not for the sale of goods then in solido, but for work and labor in part in making the articles to be delivered."

Downs v. Ross, 23 Wend. 270, decided that a sale of wheat, a quantity of which was still unthreshed, was nevertheless a sale within the statute. In Parker v. Schenck, 28 Barb. 38, a brass pump was purchased, with alterations suited in a peculiar way to the purposes of the customer, and it was held to be a case to which the statute of frauds did not apply. The court said:

"It is the same as if a man bought cloth and ordered it made into a coat."

Smith v. New York Central R. R., *43 N. Y. 180, marked the distinction between a sale and a manufacture in determining that the sale of growing wood to be cut and delivered was within the statute of frauds. An order of paper to be manufactured was decided in Parsons v. Loucks, 48 N. Y. 17, 8 Am. Rep. 517, to be without the statute.

The leading case in this state is Cook v. Millard, 65 N. Y. 352, 22 Am. Rep. 619, holding that a sale of lumber, which only needed to be dressed and cut into different sizes, was within the statute; and this was followed by Higgins v. Murray, 73 N. Y. 252, and Hinds v. Kellogg (Com. Pl.) 13 N. Y. Supp. 922. In the former circus tents manufactured to measure, and in the latter circulars designed especially for the customer's business, were held not to be sales within the statute.

The justice before whom this case was tried, having given judgment for the defendant on the ground that the statute of frauds applied, was right in setting aside this determination and granting a new trial, and his order in this particular must be affirmed, with costs.

ASPINALL and PUTNAM, JJ., concur.

(153 App. Div. 160.)

DROSTE et al. v. WABASH R. CO.

(Supreme Court, Appellate Division, First Department. November 15, 1912.)

1. CARRIERS (§ 134*)—BILLS OF LADING—SIGNATURES—AUTHORITY.

In an action by parties who had paid drafts accompanying a bill of lading against a carrier for the value of goods which the carrier never received, based on the proposition that the carrier, having issued a bill of lading, was estopped to deny their receipt, the plaintiff must prove that the bill of lading was actually issued by defendant or by its authority.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 588–592, 607; Dec. Dig. § 134.*]

2. CORPORATIONS (§ 432*)—BILLS OF LADING—SIGNATURE—EVIDENCE OF AGENT'S AUTHORITY.

In an action against a carrier for the value of goods not received, the mere production of bills of lading purporting to be issued by defendant, signed by N., would be no evidence of N.'s agency, unless knowledge that he had signed, or was in the habit of signing, such bills was brought home to defendant.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1737, 1743, 1762; Dec. Dig. § 432.*]

3. EVIDENCE (§ 220*)—ADMISSIONS—ACQUIESCENCE—WRITTEN STATEMENTS.

The plaintiff, to prove agency of N. for the defendant, cannot introduce in evidence as an admission a letter to the defendant, wherein he referred several times to "your Mr. N.," simply because the defendant in his answer made no reference to such characterization of N.; failure to deny statements in a letter being no admission of their correctness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 771–785; Dec. Dig. § 220.*]

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Charles F. Droste and another against the Wabash Railroad Company. Judgment for plaintiffs, and defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

J. Noble Emley, of New York City, for appellant.
William S. Maddox, of New York City, for respondents.

SCOTT, J. This is an appeal by defendant from a judgment entered upon a verdict in an action to recover damages for nondelivery of 300 tubs of butter. On October 23, 1907, the firm of Emerson, Marlow & Co., of Chicago, drew drafts upon plaintiffs in New York for $10,500 and attached to them two bills of lading purporting to have been issued by defendant for 300 tubs of butter each. Only one car load of 300 tubs was delivered, and this action is for the value of the other 300 tubs.

The principal question in the case is whether the bill of lading was issued by defendant, or by any one having authority to bind it. In form the bill was that of defendant. It was signed, "The Wabash Railroad Company, per *H. C. Northrop—O. Agent,*" only the italicized words being in writing. Northrop was the general agent in Chicago of the American Refrigerator Transit Company, a concern owning refrigerating cars which were transported over the lines of a number of railroad companies, including that of the defendant. The Refrigerator Company apparently did not operate the cars, merely loading them and delivering them to the railroad companies to transport. The relations between the defendant and the Refrigerator Company were apparently close, although the precise nature of these relations was not shown. Northrop had an office adjoining those occupied by defendant, and had connection with the general telephone system of the city through a private switchboard in one of the de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fendant's offices. The defendant did not issue bills of lading for perishable freight, except as delivered to it in refrigerator cars, and whenever an application was made to defendant to ship such freight, and the applicant desired a bill of lading, he was referred to Northrop. The initial "O.," following Northrop's name on the bill of lading, represented one Ofenbach, a clerk or assistant of Northrop, and it was he who actually signed the bill.

What happened was this: Ofenbach signed the two bills of lading and delivered them to Emerson, Marlow & Co., before any butter was delivered to any one, and Emerson, Marlow & Co. at once attached them to drafts which they discounted at a Chicago bank. In due course the drafts, with the bills of lading attached, were presented to plaintiffs, who paid them. In point of fact only 452 tubs in all were delivered, either to defendant or the Refrigerator Company. Of these 113 were replevied, and 39 were put in storage, leaving 300 tubs which were loaded in a refrigerator car, delivered to defendant for transportation, and ultimately received by plaintiffs.

[1] The action, therefore, is not one for the value of goods which have been actually received by the carrier, but is based upon the proposition that the carrier, having issued a bill of lading, is estopped, as to defendants, from denying that it has received the goods. Armour v. Mich. Cent. R. R., 65 N. Y. 111, 22 Am. Rep. 603. It was therefore essential to plaintiff's cause of action to show that the bill of lading was actually issued by defendant, or by its authority, or, in other words, to show that Northrop was the agent of defendant and authorized to sign bills of lading in its behalf. There was absolutely no evidence that he was in defendant's employ, and, while it appeared that he had signed other bills of lading in the same way upon which deliveries were made, there was no evidence that defendant, or any of its responsible officers, had knowledge of the fact. In this respect the plaintiff's case failed, and the complaint should have been dismissed.

[2] There were also reversible errors made in the admission of evidence. Plaintiffs were permitted, in order to establish agency, to introduce 16 similar bills of lading, which had been signed by Northrop or one of his assistants. They were not obtained from defendant, but from the custody of the agent of the Erie Railroad Company in the city of New York. It is manifest that the mere production of any number of bills of lading, purporting to be issued by defendant, but signed by Northrop, would be no evidence of Northrop's agency, unless knowledge that he had signed, or was in the habit of signing, such bills was brought home to defendant, as it was not.

[3] The plaintiffs were also permitted to introduce, by way of proving an admission of Northrop's agency, a letter written by themselves, after their claim for damages had arisen, to the general freight and passenger agent of defendant, in which they twice referred to "your Mr. Northrop." The recipient of the letter acknowledged it in a purely formal letter, making no reference to the characterization of Northrop as "your Mr. Northrop." In his charge the trial justice

particularly called the attention of the jury to this letter, and the reference in it to Northrop, and said:

"The plaintiffs say they never received any reply to the letter, and, notwithstanding there seems to have been some direct notice given that the plaintiffs claimed that the bill of lading was signed by Northrop, there has been no repudiation of that, so far as I have been able to discover, by the Wabash Railroad Company to the firm of Droste & Snyder. It is needless for me to go into all the details and all the circumstances from which you might infer agency."

The introduction of the letter and the comments of the justice thereon were duly excepted to. It is easy to see how prejudicial they must have been to the defendant, for the jury were charged, in effect, that they might infer an admission of Northrop's agency from the failure of defendant to repudiate it on receipt of plaintiff's letter. This is not the law.

"While a party may be called upon in many cases to speak where a charge is made against him, and in failing to do so may be considered as acquiescing in its correctness, his omission to answer a *written* allegation, whether by affidavits or otherwise, cannot be regarded as an admission of the correctness thereof, and that it is true in all respects. Reason may exist why he may choose, and has the right, to remain silent, and to vindicate himself at some future time and on some more opportune occasion." Viele v. McLean, 200 N. Y. 260–262, 93 N. E. 468, 469.

See, also, Gray v. Kaufman, 162 N. Y. 388, 56 N. E. 903, 49 L. R. A. 580, 76 Am. St. Rep. 327; Bank of B. N. A. v. Delafield, 126 N. Y. 418, 27 N. E. 797; Thomas v. Gage, 141 N. Y. 506, 36 N. E. 385.

Since, for the errors above noted, the judgment must be reversed, we deem it unnecessary to discuss the other exceptions which have been argued by counsel or upon the briefs.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur. LAUGHLIN, J., dissents.