ISAAC C. ELLIS *vs.* HORACE SWAN *et al.*

MARCH 22, 1916.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Equity.   Removal of Cloud.   Leases.   Abandonment.*

On a bill in equity to obtain the cancellation of a lease for 99 years, conferring upon lessee the right to quarry granite on lessor's land, it appeared that from the execution of the lease for a period of twenty years, lessee had performed no act which could reasonably be said to be a working of the quarry or the making of preparations to that end.

*Held*, that such failure on the part of lessee would justify the conclusion of an intention to abandon the lease, but such abandonment could not be brought about by the action or inaction of lessee alone, but there must be some act or attitude on the part of lessor indicating his acquiescence in the abandonment.

*Held*, further, that the act of lessor in rendering a bill for rent showed an intent to hold lessee to the terms of the lease and did not support any claim of an acquiescence in the abandonment of the lease up to that time.

*Held*, further, that if there had been an abandonment by lessee the filing of the bill in equity by lessor for cancellation of the lease would be sufficient to show his acquiescence therein.

*Held*, further, that a period of three years of inactivity on the part of lessee after the rendering of the bill for rent, following a prior period of thirteen years was sufficient to show an abandonment on the part of lessee.

*(2)   Leases.   Rental.   Abandonment.*

A lease conferring the right to quarry granite on the land of lessor, contained the following reservation of rent "paying therefor during said term the sum of one cent per cubic foot on all stone used for monumental work, providing the sum shall not exceed $25 for any one year when the quarries are worked; when the quarries are not worked the payment shall be but one dollar per year.   There will be no forfeiture of this lease until made in writing by the said lessee his heirs, executors, administrators or assigns."

*Held*, that this did not fix a minimum rental of one dollar per year and did not give the option to lessee to work or not to work the quarry at his election, but such rental was intended to cover periods when lessee was temporarily prevented from prosecuting the work and that it was incumbent on lessee to work the quarry within a reasonable time after the execution of the lease and to continue to work it except during periods when it would be impracticable to do so.

*Held*, further, that the purpose of the transaction being to benefit lessor as well as lessee, the lessee must exercise his privilege in good faith and in a manner which would not unnecessarily deprive lessor of his profit.

BILL IN EQUITY to remove cloud from title.   Heard on appeal of respondents and appeal dismissed.

VINCENT, J.   This is a bill in equity brought in the Superior Court for the county of Washington to remove a cloud upon title.   The bill alleges that the complainant, Isaac C. Ellis, is the owner in fee of a certain farm comprising about 320 acres, located in the town of Richmond, in said county; that he has been the owner in fee and in the uninterrupted, exclusive, quiet, peaceable, and actual seizin and possession thereof for a period of more than nineteen years last past; that on said farm there is a valuable deposit of granite and that a quarry was opened thereon prior to March 20, 1895.   That on March 20, 1895, the complainant executed a lease of said quarry to the respondent, Horace Swan, for ninety-nine years, with the privileges necessary to successfully operate and work the same, paying therefor during said term "the sum of one cent per cubic foot on all stone used for monumental work providing the sum   .   .   . shall not exceed twenty-five dollars for any one year when the quarries are worked.   When the quarries are not worked the payment shall be but one dollar per year."

That said lease further provides that there shall be no forfeiture thereof until made in writing by the lessee, his heirs, executors, administrators or assigns; that said lease was recorded in the land records of said Richmond, March 22, 1895; that the said respondent, Swan, never took possession of said farm or of the granite thereon; that he has never operated said quarry or made any preparations so to do; that the respondent has never paid rent or royalty under said lease or performed any of the covenants thereof on his part to be performed and that on January 25, 1898, the said respondent, Swan, assigned said lease to the respondent, the Swan Granite Company, which said assignment is of record in said town of Richmond.

The bill further alleges that the said Swan Granite Company has never taken possession of said farm or of the

granite thereon or made any preparations for the working
of said quarry and has never paid any rent or royalty or
performed any of the covenants of the lease; that at the
time of the transfer of the lease to the Swan Granite Com-
pany the respondent, Horace Swan, was the treasurer and a
majority stockholder thereof and that the members of the
family of said respondent, Swan, held all the other offices
and the remainder of the stock of said company; that said
company was incorporated under the laws of the State of
Maine and was upon its own request in the year 1901 placed
upon the inactive list of corporations in said state and has
since so remained.

The bill alleges in conclusion that the continued existence
of said lease and said transfer and assignment thereof have
caused the complainant great injury and damage and he
prays that the same may be declared null and void.

The respondents demurred to the bill. The demurrer
was overruled, the court deciding that a decree might be
entered declaring the lease and the assignment of the same
null and void. This decision was later modified permitting
the respondents to answer within a certain time.

After the filing of the answer, reference was made to a
master to frame issues of fact upon which the cause should be
tried and determined, and the master reported the following
issues as having been agreed to by the parties.

"1.   Had said quarries been worked sufficiently previous
to the 20th day of March, 1895, to determine the quality of
granite therein contained, and had a considerable amount
been taken from said quarries prior to said time? 2. Did
the respondent, Swan, ever take possession of the quarry in
question? 3. Did Horace Swan ever operate or work said
quarry? 4. Did the Swan Granite Company ever take
possession of the quarry in question? 5. Has it ever
operated or worked the quarry or quarried any of the stone,
rock, or granite therein? 6. Did said Horace Swan or
said Swan Granite Company ever remove any earth, stone
or trees from said quarry, or rebuild, straighten, repair,

improve, extend or make any road over and across the same, or erect any derrick, powerhouse or other building on said premises ?    7.    Did said Horace Swan or said Swan Granite Company ever make any preparations or do anything necessary to be done in order to operate and work the quarries on said premises ?    8.    Did the respondent corporation, Swan Granite Company, ever make proper tender of rent due under the lease ?    9.    Did the respondent, Horace Swan, ever make proper tender of rent due under the lease ?    10.    Did the complainant, Ellis, ever oust Horace Swan or the Swan Granite Company from possession of the demised premises ?    11.    Was the respondent, Horace Swan, ever compelled by any act of the complainant, Ellis, to discontinue work at the quarry ?    12.    Was the respondent, Swan Granite Company, ever compelled by any act of the complainant, Ellis, to discontinue work at the quarry ?    13. , Did the respondent, Swan Granite Company, voluntarily give up possession with the intention and purpose of abandoning the lease ?    14.    Was the complainant, Isaac C. Ellis, in the uninterrupted, exclusive, quiet, peaceable and actual seizin and possession of the premises in question and of every part thereof, for the period of more than ten years before March 31st, 1913, the date of the filing of the bill of complaint ?"

Upon these issues the case was heard by the Superior Court and a decree was entered declaring the lease in question null and void; commanding the respondents to surrender to the court, for cancellation, the lease and transfer, directing the cancellation of the record thereof and establishing the right, title and interest of the complainant in and to the premises described in the bill unimpaired by said lease and the transfer thereof.

From this decree the respondents have taken an appeal to this court and state the following reasons therefor.

"1.    That the court erred in answering the first issue in the affirmative.    2.    That the court erred in answering the second issue in the negative.    3.    That the court erred in

answering the third issue in the negative. 4. That the court erred in answering the 4th, 5th, 6th issues in the negative. 5. That the court erred in answering the 7th issue in the negative. 6. That the court erred in answering the 8th and 9th issues in the negative. 7. That the court erred in answering the 11th and 12th issues in the negative. 8. That the court erred in ordering and entering a decree in favor of the complainant as prayed for in the bill of complaint. 9. That in and by the terms of the lease the respondents had the option of allowing the quarries to lie idle without being guilty of an abandonment. 10. That the terms of the lease prevent and preclude a cancellation of the lease on the ground of abandonment. 11. That the terms of the lease prevent an abandonment or forfeiture of the lease in any way except the act of the lessee in writing. 12. That the decision of the Superior Court in favor of the complainant and the entry of the final decree was contrary to the law. 13. That the decision of the Superior Court was contrary to the evidence and the weight thereof."

The purpose of the bill is to obtain the cancellation of a lease for ninety-nine years which the complainant claims is a cloud upon his title, and that he is entitled to the relief sought because the respondents have never, since the execution of the lease on March 20, 1895, done anything in the way of working the quarry or made any preparations for so doing, and that the long continued inactivity of the respondents amounts to an abandonment of the lease. The lease according to its terms conferred upon the respondents the right to quarry rock and granite on complainant's land without conveying any title to such rock and granite until it was severed from the realty.

The assignment of the lease on January 25, 1898, from the respondent, Swan, to the respondent, the Swan Granite Company, is of slight importance in the consideration of the questions before us; (1) because the condition of inactivity which had existed prior to that date was obviously continued thereafter, and (2) because the corporation, called the Swan

Granite Company, was owned and controlled by the respond-
ent, Swan, so that there was little else effected by the assign-
ment except a change of name.

It appears from the evidence submitted in the trial court
that no rent has ever been paid, but that the parties were at
one time in communication relative to the adjustment of the
rent due under the lease, and that the complainant sent to
the respondent, Swan, under date of December 1, 1909, a bill
for rent amounting to the sum of $19.46. This amount
covered the rent at one dollar per year for fourteen years
from the date of the lease to March 20, 1909, with interest
added. On December 22, 1909, the respondent, Swan, sent
to the complainant a check for $14 which the complainant
returned on the following day with a letter stating that his
reason for so doing was the omission of the interest. Noth-
ing further appears to have been done by either of the parties
looking to the payment or adjustment of the rent due under
the lease.

Down to December 1, 1909, the time when the complain-
ant rendered his bill for rent, neither of the respondents had
done anything in the way of quarrying stone or in preparation
therefor, except to take three samples which the respondent,
Swan, claims were used by him in attempts to make advance
sales of granite. No sales were made however and there is no
testimony that the respondents at any time incurred any
expense in preparing to operate the quarry. The respondent,
Swan, claims that upon a number of occasions in the year
1895 he was upon the premises with a horse and wagon
surveying, arranging to remove water, etc., but the testimony
of Swan upon this point was disbelieved by the trial court
and we cannot see that if admitted to be true it would have
any substantial bearing upon the conditions which later
obtained. The respondent, Swan, further claims that sub-
sequent to 1905 he visited the premises, from time to time,
on foot, but as such visits apparently were made without any
definite purpose in view, and were entirely without result,
they furnish nothing of importance for our consideration.

(1)    The testimony does not disclose any act on the part of the respondents from the execution of the lease to the filing of the complainant's bill, a period of twenty years, which could reasonably be said to be a working of the quarry or the making of preparations to that end. This long continued failure on the part of the respondents would be sufficient to justify the court in concluding that there was an intention on their part to abandon the lease. But an abandonment cannot be brought about by the action or inaction of the lessee alone. There must be some act or attitude on the part of the lessor indicating his acquiescence in the abandonment. Baringer & Adams on Law of Mines and Mining, Sec. 170; 1 Wash. Real Property, Sec. 739; Jones on Landlord and Tenant, Sec. 539; *Gray* v. *Kaufman*, 162 N. Y. 388; *Charleston, S. C. Mining & Mfg. Co.* v. *Am. Agricultural Chem. Co.*, 150 S. W. 1143.

In this connection it is necessary to consider the demand of the complainant for rent due as evidenced by the bill which he sent to the respondent, Swan, on December 1, 1909, and also the complainant's letter of December 23, 1909, returning the check sent in settlement of the bill on the sole ground that it did not include interest. We think that these acts of the complainant manifested a desire and intent on his part to hold the respondents to the terms of the lease and to exact from them the payment of the rent specified therein, leaving nothing to support the assertion that the complainant had up to that time acquiesced in the abandonment of the lease on the part of the lessee or his assignee.

Since December, 1909, down to the time of the filing of complainant's bill on April 3, 1913, the same inactivity on the part of the respondents has continued and during this last named period there have been no negotiations between the parties to the lease, as to rent, which could in any way affect the question of abandonment. It therefore remains for us to determine whether or not under the facts and circumstances occurring since December, 1909, the lease should be cancelled on the ground of abandonment.

If there is an abandonment on the part of the respondents the filing of the bill by the complainant would be sufficient to show his acquiescence therein and further discussion as to that does not seem to be called for.

The respondent, Swan, admits that he last saw the quarry hole in 1908 and nothing has since been done looking to the operation of the quarry. Taking into account this period of inactivity, following as it does a prior and equally inactive period of some thirteen years, it is a natural and reasonable conclusion that the respondents have abandoned all idea of availing themselves of any privileges under the lease in question.

The respondents claim that the terms of the lease did not place them under any implied obligation to work the quarry, but that they had the right to suffer it to remain idle without (2) incurring abandonment. With this contention of the respondents we cannot agree.

The reservation of rent in the lease is in the words, "yielding and paying therefor during said term the sum of one cent per cubic foot on all stone used for monumental work, providing the sum as set forth above shall not exceed $25 for any one year when the quarries are worked; when the quarries are not worked the payment shall be but one dollar per year. There will be no forfeiture of this lease until made in writing by the said lessee, his heirs, executors, administrators or assigns." This clause does not fix a minimum rental of one dollar per year. It might be less if the stone quarried for monumental work did not amount to 100 cubic feet. The payment of one dollar per year was only to be made when the quarry was not worked at all. The respondents desire to have this clause construed as giving them the option to work or not to work the quarry as they might elect.

The provision for a rental of one dollar per year was evidently intended to cover periods of necessary preparation or such emergencies as might arise temporarily preventing the prosecution of the work. We do not think that it fairly can be said to have been the intention of the parties that the

respondents should enjoy the privilege of keeping the quarry idle during the term of the lease upon the payment of one dollar per year. Such a construction of the lease would be so unreasonable that it cannot be presumed to express the intent of the parties executing that instrument. We think it was incumbent upon the respondents to work this quarry within a reasonable time after the execution of the lease in 1895 and to continue to work it except during such periods as might be impracticable. The rights of the lessor as well as those of the lessee must be considered, having a due regard for the intentions of the parties, their situation, the subject-matter of the agreement, the object they had in view and what they desired to accomplish. The only material advantages or adequate compensation for the rights granted which could come to the complainant, as lessor, must necessarily arise in and flow from the working of the quarry. The purpose of the whole transaction is to benefit the lessor as well as the lessee. The lessee has both a privilege and a responsibility. While he has the privilege of quarrying the stone on the land of the lessor he must exercise that privilege in good faith and in a manner which will not unnecessarily deprive the lessor of the profit and advantage which he is resonably entitled to enjoy, and this view is amply supported by authority. *Shenandoah Land and Anthracite Coal Co.* v. *Hise,* 92 Va. 238; *Brown et al.* v. *Wilmore Coal Co.,* 153 Fed. 143 (Penn.); *People's Gas Co. et al.* v. *Dean,* 193 Fed. 938 (Kan.); *Porter et al.* v. *Noyes et al.,* 47 Mich. 55; *Aye et al.* v. *Philadelphia Co.,* 193 Penn. 451; *Breckenridge Asphalt Co.* v. *Richardson,* 146 S. W. 437 (Ky.).

The respondents argue that many of the authorities cited relate to what are known as mining leases and therefore are not applicable to the present case. We see no reason for rejecting them as the situation, especially as to the working within a reasonable time, is the same as in the case at bar.

The issues of fact numbered 1 and 14 were answered by the Superior Court in the affirmative and the remaining issues in

the negative, and thereupon a decree was entered in the Superior Court, as follows:

"FIRST. That a certain lease, dated March 20th, 1895, from Isaac C. Ellis to Horace Swan of all the rock and granite in and upon that certain farm or tract of land known as the Ephraim Collins Farm, containing three hundred twenty (320) acres, more or less, situated in the town of Richmond in said county on both sides of the highway leading from Wood River Junction to Hope Valley and bounded and described generally as follows: northerly by lands now or formerly of Moses Barber, Ellen Cato and Frank E. Sweet, easterly by land now or formerly of Barber and Reynolds, southerly by lands now or formerly of Richard Riley, Morris Sudgen, John A. Corey and Daniel Aldrich, westerly partly by the Wood River, so-called, partly by said highway, and partly by said land now or formerly of Ellen Cato, which said lease is recorded in the records of Land Evidence in said town of Richmond in Book Number 15, at Page 8, and a certain assignment and transfer thereof by said Horace Swan to Swan Granite Company, dated January 25th, 1898, and recorded in said records in Book Number 15, at Page 152, and each of them, and the said records thereof are hereby declared null and void.

"SECOND. That said Horace Swan and the Swan Granite Company shall forthwith surrender said lease and said transfer and assignment to this court for cancellation.

"THIRD. That the said records of said lease and of said assignment and transfer are hereby ordered and directed to be cancelled.

"FOURTH. That the right, title and interest of said Isaac C. Ellis in and to said premises is in no manner affected or impaired because or by reason of said lease, said transfer and assignment thereof, said records thereof or of any claims or pretences of the said Horace Swan or said Swan Granite Company thereunder."

We think that the decision of the Superior Court was correct. The respondents' appeal is dismissed, the decree

of the Superior Court is affirmed and the case is remanded to said court for further proceedings.

*Samuel H. Davis, Greenough, Easton & Cross,* for complainant.

*Harry P. Cross,* of counsel.

*Harry B. Agard,* for respondents.