**JAMAICA SAVINGS BANK, Plaintiff,**

v.

**Louis J. LEFKOWITZ, as Attorney General of the State of New York, Defendant.**

**No. 74–C–1066.**

United States District Court, E. D. New York,

Feb. 28, 1975.

Bond, Tobin & Davis, Mineola, for plaintiff; Hughes Hubbard & Reed, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., New York City, by Stanley L. Kantor, Asst. Atty. Gen., for defendant.

Before GURFEIN, Circuit Judge, and COSTANTINO and KNAPP, * District Judges.

* When the case was argued, Judge Anthony J. Travia, U.S.D.J., E.D.N.Y., was on the panel. He resigned before a decision could be rendered, and by order Judge Knapp was substituted for him and participated in the decision.

## OPINION

COSTANTINO, District Judge.

This suit attacks the constitutionality of the recently enacted New York Statute, Chapter 119 of the Laws of 1974,[1] which requires mortgage lending institutions to pay interest on mortgage "escrow" accounts. The complaint requests the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284, preliminary and permanent injunctive relief enjoining enforcement of Chapter 119, and a declaratory judgment that the section is unconstitutional as applied. Defendant has cross moved to dismiss the complaint for lack of federal jurisdiction, failure to state a claim for which relief can be granted and failure to join indispensable parties. Specifi-

cally plaintiff argues that the statute contravenes the contracts clause of the Constitution, art. I, section 10, and the equal protection and due process clauses of the Fourteenth Amendment. The action is brought under the aforementioned sections of the Constitution, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202 and jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(3). By order dated August 29, 1974 plaintiff's application to convene a three-judge court was granted.

## I

The facts have been stipulated to and those relevant to this decision can be briefly stated. It is the general practice of the mortgage lending industry to re-

---

1. The pertinent parts of Chapter 119 are:
   Section 1. · The Banking law is hereby amended by adding thereto a new section, to be section fourteen–b, to read as follows:
   § 14–b. *Power of the banking board to prescribe minimum rate of interest on mortgage escrow accounts*
   1. The banking board shall have the power to prescribe, from time to time but not more often than once in every three month period, by a three-fifths vote of all its members, by regulation a minimum rate of and method or basis of computing, interest that a mortgage investing institution shall be required to pay on each escrow account maintained with respect to a mortgage on a one to six family residence occupied by the owner and located in this state, which rate shall be greater than the rate of interest required to be paid under section 5–601 of the general obligations law.
   * * * * *
   4. In no event shall interest be required to be paid on escrow accounts where (i) there is a contract between the mortgagor and the mortgage investing institution, entered into before the date this sub-division shall have become a law which contains an express disclaimer of an obligation on the part of the mortgage investing institution to pay interest on such accounts, or (ii) the payment of such interest would violate any federal law or regulation, or (iii) such accounts are maintained with a mortgage servicing company, neither affiliated with nor owned in whole or in part by the mortgage investing institution, under a written contract, entered into before the date this subdivision shall have become a law, which contract does not permit the mortgage investing

institution to earn or receive a return from the investment of such accounts.
§ 2. Article five of the general obligations law is hereby amended by inserting therein a new title, to be title six, to read as follows:
Title 6. *Interest on certain deposits*
Section
5–601. *Interest on deposits in escrow with mortgage investing institutions.*
§ 5–601. *Interest on deposits in escrow with mortgage investing institutions*
Any mortgage investing institution which maintains an escrow account pursuant to any agreement executed in connection with a mortgage on any one to six family residence occupied by the owner and located in this state shall, for each quarterly period in which such escrow account is established, credit the same with dividends or interest at a rate of not less than two per centum per year based on the average of the sums so paid for the average length of time on deposit or a rate prescribed by the banking board pursuant to section fourteen–b of the banking law and pursuant to the terms and conditions set forth in that section whichever is higher. The banking board shall prescribe by regulation the method or basis of computing any minimum rate of interest required by this section and any such minimum rate shall be a net rate over and above any service charge that may be imposed by any mortgage lending institution for maintaining an escrow account. No mortgage investing institution shall impose a service charge in connection with the maintenance of an escrow account unless provision therefor was expressly made in a loan contract executed prior to the effective date of this act.

quire that a borrower to whom a mortgage loan has been extended deposit with the lending institution funds to ensure payment of real estate taxes and assessments, and insurance premiums on the mortgaged premises. These deposits, called "escrow" accounts, protect the lending institution from being subjected to the superior claims of taxing authorities if there is a failure to pay taxes and a loss from destruction of the mortgaged property if insurance policies lapse.

When plaintiff entered into the mortgage contracts at issue it did not intend to segregate these deposits or account to mortgagors for profits arising from the use of the escrow funds. The contract provisions establishing the escrow accounts, however, did not refer to the disposition of any income from the accounts nor did they indicate any intention of the parties as to who shall have use of the funds in the accounts between the day of deposit and the due date of the taxes and insurance premiums. Paragraph 12 of the stipulation of facts is important to the disposition of this suit and accordingly will be included verbatim:

> At all times when the 12,000 mortgage loans referred to in Paragraph 4 above were made, it was JSB's [plaintiff's] policy to commingle escrow accounts with other funds of JSB and not to pay any specific return on the escrow accounts to the mortgagors. This policy was made known to anyone who inquired as to what the policy of JSB was in this regard. It was well known to all experienced real estate attorneys and certainly to attorneys representing mortgagors in their dealings with JSB. With relatively rare exception, all of the 12,000 mortgagors referred to above were represented in loans by counsel of their own choosing; and most of the exceptions were themselves attorneys. Any mortgagor or potential mortgagor who has inquired as to whether he might earn a return on the escrow account has been informed that no such return

is available. If any such return had been insisted upon, it would have been the policy of JSB to refuse to make the loan.

Chapter 119 requires the plaintiff and other mortgage lending institutions to pay homeowner mortgagors a minimum of two percent interest on escrow funds deposited with the mortgagee for the future payment of taxes and insurance premiums, except where the mortgages were executed before the enactment and expressly provide that no interest is to be paid.

## II

■ Plaintiff first contends that chapter 119 "impaired" the mortgage contracts entered into prior to April 1, 1974—the date of enactment—since under then-existing law it had no obligation to pay interest. In determining if there has been an impairment the initial inquiry must be whether there is in fact a contract as to the use of the escrow funds. Plaintiff argues in essence that non-payment of interest on the escrow accounts became an unstated term of the mortgage contracts because of the knowledge of the attorneys for mortgagors that the bank would pay no interest and the attorneys' acquiescence in that arrangement. Further, the bank contends that non-payment of interest was a "bargained for" term, citing as proof its assertion that it would not have entered into any mortgage arrangement had it been required to pay interest on the escrow accounts. The bank maintains that the knowledge of mortgagors' attorneys of the policy of no interest "show[s] that the use of the escrow funds was bargained for by Jamaica Savings Bank in a legal sense even if in particular instances the question may have not been raised by the mortgagors."

■ This assertion necessarily leads the court to consider whether non-payment of interest became an "implied in fact" term of the mortgage contracts. Like express terms, implied in fact terms must be agreed to to become part of the contract, 1 Williston, Contracts §

3; Crosby v. Paul Hardeman, Inc., 414 F.2d 1, 7 (8th Cir. 1969). Basic contract law teaches that each party must agree with definiteness to the terms of a contract and manifest its intention to create an obligation to the other party. Simpson, Contracts, §§ 3, 9 (1954). Even when contracts do not so expressly state it is sometimes possible to infer that certain unstated terms are part of the contract because of the circumstances. Baltimore & Ohio R.R. v. United States, 261 U.S. 592, 598, 43 S.Ct. 425, 67 L.Ed. 816 (1923). The New York Court of Appeals many years ago stated the rule most cogently:

> A contract cannot be implied *in fact* * * * against the intention or understanding of the parties; * * * The assent of the person to be charged is necessary and unless he has conducted himself in such a manner that his assent may fairly be inferred, he has no contract.

Miller v. Schloss, 218 N.Y. 400, 406–407, 113 N.E. 337, 339 (1916). *See also* Gray v. Kaufman Dairy & I.C. Co., 162 N.Y. 388, 397, 56 N.E. 903 (1900).

In the case under consideration the persons "to be charged" are the mortgagors. Therefore, it is necessary to prove that they agreed that no interest would be received. The only proof offered here as to the assent of the mortgagors is that their attorneys may have known of the bank's policy. How this indicates a "bargained for" term that has been agreed to is not explained by the bank. The absence of a provision in a series of contracts providing that no interest will be paid on escrow accounts cannot raise the implication that nonpayment of interest became a term of the contracts. Since there were no provisions in the contracts as to the use and disposition of the profits derived from use of the escrow accounts, legislation which provides for a specific allocation of those profits cannot be said to impair the contracts.

The plaintiff implies alternatively that, even without an express provision to that effect in the mortgage, under New York law interest is not payable on escrow funds. If New York law were clearly to that effect it might be an implied negative term of the mortgage agreement that conceivably could raise a question under the obligation of contracts clause. The cases cited by plaintiff fall short, however, of establishing such a principle of New York law. New York State Thruway Authority v. Hurd, 25 N.Y.2d 150, 303 N.Y.S.2d 374, 250 N.E.2d 469 (1960) is cited in support of the proposition. In *Hurd* the Court of Appeals decided that in the absence of an express obligation, the Thruway Authority was not required to pay interest to the State of New York for advances made to it by the State. In that case there were advances to the obligee. Here there is a deposit of money to be paid to a third party. In *Hurd* the considerations were quite different involving the power to make advances of public money to a public authority. In that situation, the Court of Appeals reasonably suggested that an implied obligation to pay interest may not lightly be found. 25 N.Y.2d at 158, 303, N.Y.S.2d 374, 250 N.E.2d 469.

Lower court cases cited are in some disagreement and we do not find them sufficiently definitive to require the incorporation of any legal doctrine as an implied term of the contract.

We need not go so far as the Supreme Judicial Court of Massachusetts in determining that escrow accounts deposited in banks to pay taxing authorities are trusts. Carpenter v. Suffolk Franklin Savings Bank, —— Mass. ——, 291 N.E.2d 609 (1973). It is enough for us to say that New York law falls short of declaring as a term of the mortgage, that interest need not be paid on such funds.

Even if the unstated "no interest" terms were, in fact, bargained for by the mortgagors or, alternatively, even if New York State law was clear that there was no obligation to pay interest on escrow accounts, the state legislature would have had the right under its po-

lice power to require that mortgage lending institutions pay interest on these accounts. Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); Gelfert v. National City Bank, 313 U.S. 221, 61 S. Ct. 898, 85 L.Ed. 1299 (1941); East New York Savings Bank v. Hahn, 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945); El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965).

> The Blaisdell opinion, which amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause, makes it quite clear that "[n]ot only is the constitutional provision qualified by the measure of control which the state retains over remedial processes, but the State also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end 'has the result of modifying or abrogating contracts already in effect.' Stephenson v. Binford, 287 U.S. 251, 276 [53 S.Ct. 181, 189, 77 L.Ed. 288]. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. . . ." 290 U.S., at 434–435 [54 S.Ct., at 238–239]. Moreover, the "economic interests of the state may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts." Id., at 437 [54 S.Ct., at 239]. The State has the "sovereign right . . . to protect the . . . general welfare of the people . . . . Once we are in this domain of the reserve power of a State we must respect the 'wide discretion on the part of the legislature in determining what is and what is not necessary.'" East New York Savings Bank v. Hahn, 326 U.S. 230, 232–233 [66 S.Ct. 69, 71, 90 L.Ed. 34].

El Paso v. Simmons, 379 U.S. 497, 508–09, 85 S.Ct. 577, 584 13 L.Ed.2d 446 (1965).

What occurred in this case was that the state legislature created a remedy to a problem it perceived—the inability of citizens seeking mortgages from mortgage lending institutions to bargain effectively ·for the use of funds put into the hands of the institutions to secure the mortgaged premises. It is uncontroverted that mortgagors could not have obtained mortgages if they had insisted upon a term in the contracts providing interest. These mortgage agreements—almost all identical—were drafted by the plaintiff and essentially were offered to potential mortgagors on a take it or leave it basis. The state legislature properly exercised its power to correct an imbalance in the bargaining relationship.

For the reasons stated Chapter 119 did not unconstitutionally impair the mortgage contracts under consideration.

### III

[5] Plaintiff next asserts that the statutory distinction between contracts which expressly exclude the payment of interest and those which are silent on the subject is irrational and thus violative of the equal protection clause of the Fourteenth Amendment. The test for determining whether a statutory classification violates the equal protection clause is whether the classification is made without any reasonable basis and therefore is purely arbitrary. Royster v. McGinnis, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

The distinction in the statute implicitly recognizes that mortgagors may have entered into the mortgage contracts never having considered the possibility of interest on the escrow accounts. However, where, by express language, mortgagors were made aware of the possibility of interest, and they expressly waived their rights to it, then the legislature was entirely rational in not wishing to confront a potential constitutional problem. Moreover, the purpose of the

statute—to correct the imbalance in the bargaining relationship between banks and homeowners—would not necessarily be served by modifying contracts which contained expressed "bargained for" terms. Since the distinction has a reasonable basis, i.e., avoiding a possible constitutional attack and restoring fairness to the relationship between banks and mortgagors, there is no violation of the equal protection clause.

## IV

■■ Plaintiff's final contention is that the Chapter 119 requirement that it pay interest on escrow funds is a "taking" without due process in violation of the Fourteenth Amendment. This claim is not substantial. It is not necessary to determine with precision what legal relationship was created by the escrow deposit. Mortgagees are constitutionally entitled to no more than payment in full. Gelfert v. National City Bank, 313 U.S. 221, 233, 61 S.Ct. 898, 85 L.Ed. 1299 (1941). Whether it was a trust or an agency or whether the bank actually became a debtor to the mortgagor is unimportant for constitutional purposes, since, in any event, the mortgage institution did not obtain an ultimate beneficial interest in the funds for itself. Indeed, if the escrow accounts were true bank deposits we see no reason why the state could not require the payment of interest on such accounts for the benefit of a class that needed protection.

If the plaintiff had obtained a beneficial interest, perhaps that interest could only be divested under the police power. See Home Bldg. & L. Ass'n v. Blaisdell, 290 U.S. 398, 435–38, 54 S.Ct. 231, 78 L.Ed. 413 (1934); East New York Savings Bank v. Hahn, 326 U.S. 230, 231–32, 66 S.Ct. 69, 90 L.Ed. 34 (1945). Since the funds were given to the bank for the specific purpose of paying a third party, either the taxing authority or the insurance company, the money was never intended to belong to the mortgage institution for its benefit. It is true that creditors of the mortgagor could not reach the funds. See Matter of Simon, 167 F.Supp. 214 (E.D.N.Y.

1958); Central Suffolk Hospital Ass'n v. Downs, 213 N.Y.S.2d 192 (Sup.Ct. Kings Co., 1961); and Valerio v. College Point Savings Bank, 48 Misc.2d 91, 264 N.Y.S.2d 343 (Sup.Ct. Suffolk Co., 1965). But that is not because the bank had the beneficial interest in the funds. It is rather because the mortgagor had already divested himself of the funds for payment to the third party through the agency of the bank and could no longer recall them. Since the bank had no ultimate beneficial interest, there is no need to consider the effect of the police power of the state upon these escrow accounts for the protection of homeowners. See Home Bldg. & L. Ass'n v. Blaisdell, supra.

Plaintiff might also have been able to argue that the Chapter 119 requirement is a taking if it could prove that to pay the interest to mortgagors it would have to dip into its own general funds if the profits from the escrow accounts could not cover the required payments. It was the intention of the New York State Legislature in adopting Chapter 119 to require that mortgage lending institutions share with their mortgagors the profits which are realized from the investment of monies held by the institutions. After considerable investigation including public hearings, the legislature concluded that mortgage lenders could "well afford to pay" at least two percent interest on escrow accounts, Memorandum in support of the Bill, Chapter 119, § 2268, 1974. Plaintiff offers no evidence to rebut this finding. The fact that the plaintiff might currently be losing money on its mortgage loans as a whole sheds no light on the escrow account problem. We are concerned only with the profits and losses realized specifically from the investment of escrow funds. We find that no such showing has been made.

In view of the above analysis it appears that plaintiff's claim of an unconstitutional taking is without merit.

### Conclusion

For the above stated reasons plaintiff's application for declaratory relief

**1364**

that Chapter 119 is unconstitutional and an injunction enjoining enforcement of that provision is hereby denied. Defendant's cross motion to dismiss the complaint is granted.

The Clerk of the court is directed to prepare an order directing that this complaint be dismissed.

WHITMAN KNAPP, District Judge (concurring).

I concur completely in the majority opinion except insofar as it suggests—in the opening paragraphs of Part II—that there is "no contract" with respect to the payment or non-payment of interest for the use of the escrow funds. Believing that the mortgage contracts between the homeowners and the banks necessarily comprehend the entire understanding between the parties—which must include the payment or non-payment of interest—I concur on the alternative ground set forth at the end of Part II.